[Civ. No. 863. Fifth Dist. Dec. 11, 1967.]

FAVIAN CANO et al., Plaintiffs, Cross-defendants and Respondents, v. E. C. TYRRELL et al., Defendants, Crosscomplainants and Appellants; CLIFTON FARIS et al., Cross-defendants and Respondents.

Joseph E. Burke for Defendants, Cross-complainants and Appellants.

Young, Nareau & Hoyt, Young & Nareau and John A. Young for Plaintiffs, Cross-defendants and Respondents and for Cross-defendants and Respondents.

STONE, J.—Defendants and Cross-Complainants appeal from a decree ordering specific performance of an agreement for the exchange of real property between plaintiffs Favian Cano and Bonnie L. Cano, his wife, and defendants E. C. Tyrrell and Claire E. Tyrrell, his wife.

At the time the exchange agreement was executed the Canos owned and operated a rest home at 735 4th Street, Woodland, in Yolo County, licensed for six guests. The home consisted of five bedrooms downstairs, three capable of accommodating two guests per room, and an upstairs bedroom occupied by the Canos' daughter, unsuitable for use as a rest home bedroom because access was by way of an outside staircase. There was also a separate garage building, one-half of which had been converted into two bedrooms. The Canos listed the property for sale with broker Faris and his salesman, Ginise.

The Tyrrells had previously purchased a lot through Ginise, who was aware that Tyrrell, a building contractor, intended to build an apartment house or a rest home on the lot for resale purposes or to be operated through a manager.

Ginise negotiated an agreement between the property owners by which Tyrrell was to obtain a construction loan and build a rest home on his lot which, when completed, would have an agreed value of $65,000, and to convey the property to the Canos upon the condition: "Mr. and Mrs. Cano to assume construction loan of approximately $45,000.00 or best loan available. E. C. Tyrrell to carry 2nd Note & TD for approximately $13,000.00 payable interest only the 1st year & thereafter at the rate of $150.00 per month or more including interest of 7%."

In turn, the Canos were to convey their property to Tyrrell upon the condition: "E. C. Tyrrell to assume 1st TD & 2nd TD on 735 4th of approximately $11,555.26 payable $145.00 per month or more."

The exchange agreement further provided: "There are to be no cash adjustments to actual balances on encumbrances. Any differences are to be adjusted in the amount of the paper being created in this escrow."

In a separate agreement, Tyrrell agreed with Faris Realty to satisfy the real estate commission partly by cash and partly by a note secured by a second deed of trust.

An escrow was opened at the Title Insurance & Trust Company and instructions covering the various aspects of the property exchange were signed by Mr. and Mrs. Tyrrell as well as by the Canos. It is significant that Mr. and Mrs. Tyrrell also signed and placed in escrow a joint tenancy deed whereby they, as grantors, conveyed to Mr. and Mrs. Cano the lot upon which the rest home was to be constructed. The Tyrrells also signed a collateral assignment of a deed of trust to secure payment of a note payable to Faris Realty to cover the real estate commission. The escrow agreement stipulated that the escrow was to be closed and all documents delivered when Tyrrell completed the construction of the rest home.

Thereafter Tyrrell obtained a construction loan on his property for $50,000, or $4,500 above the amount the Canos agreed to assume. Tyrrell also requested city authorities to inspect the Cano property, which resulted in a letter dated September 1, 1964, signed by the fire marshal, itemizing five infractions. The important one as far as we are concerned

was that unless improvements were made, the upstairs room could be used only for storage. Shortly after receipt of the letter, the Canos and Mr. Tyrrell met with Ginise at his office and discussed the contents of the letter. The Canos agreed to remedy the defects and in the meantime to discontinue use of the upstairs room for a bedroom. Mr. Tyrrell agreed to this. The Canos also agreed, with Tyrrell's approval, to bring their garage bedrooms up to building code standards.

However, on October 22, 1964, the Tyrrells had their attorney notify the Canos that they were rescinding the contract on the ground of fraudulent representations. They also demanded return of $1,500 paid as commission to Faris Realty, and of their note to Faris Realty for $2,400. The Canos, on October 26, 1964, commenced this action against Mr. Tyrrell alone, seeking specific performance of the property exchange agreement or, in the alternative, damages. Tyrrell cross-complained against the Canos on the theory of rescission grounded on fraudulent representations, and also alleged a cause of action against Clifton Faris of Faris Realty, and Lewis Ginise, the real estate agent, seeking to recover $1,500 paid and to have their note surrendered and cancelled. The Canos then amended their complaint to join Mrs. Tyrrell, who had not signed the exchange agreement, as a defendant, alleging "That on or about the 27th day of May, 1964, the defendant Claire E. Tyrrell by executing escrow instructions with Title Insurance & Trust Company, Woodland, approved in writing the agreement with said plaintiffs."

Mrs. Tyrrell answered, denying that she was a party to the contract or in privity with the Canos. She also sought, by cross-complaint, to recover the $1,500 real estate commission paid to Faris and Ginise.

The trial court decreed specific performance of the exchange agreement and, in the event the loan agency, Guarantee Savings & Loan Association, should refuse to consent to assumption by the Canos of the construction loan in an amount in excess of $45,500, that the Tyrrells reduce the lien against the property from $50,000 to $45,500. The court also entered a judgment against the Tyrrells on their cross-complaint to recover the real estate commission.

### Agency

Appellants attack the trial court's finding that E. C. Tyrrell acted as the agent of his wife, Claire E. Tyrrell, on two

grounds, first, that the Canos failed to plead agency and, second, lack of evidence to support the finding of agency.

*Pleading.* The Canos, in their action for specific performance, did not allege that Tyrrell acted for Mrs. Tyrrell, but simply that Mrs. Tyrrell approved in writing the property exchange agreement executed by Mr. Tyrrell. It has been held that in bringing an action predicated upon a contract, pleading the ultimate fact that the contract was executed is sufficient; it is not necessary to plead that an agent executed the contract on behalf of his principal. (2 Witkin, Cal. Procedure (1954) Pleading, § 255, p. 1231; 2 Cal.Jur.2d, Agency, § 178, Pleading, p. 879, and cases cited therein.) The reasoning is that in this circumstance the fact of agency is evidentiary matter to be proved by competent evidence during trial. A recent case treating precisely this question, *Pfaff* v. *Fair-Hipsley, Inc.*, 232 Cal.App.2d 274, had this to say, at page 279 [42 Cal.Rptr. 624] : ''The cause of action against Fair-Hipsley was properly pleaded. 'The plaintiff need only allege the ultimate fact of the making of the contract by the defendant and himself. At the trial it may be proved as evidence of this ultimate fact that an authorized agent acted on behalf of the defendant, without the necessity of alleging the fact of agency or the agent's authority.' [Citation.] ''

■ *Ratification.* There is no point in burdening this opinion with excerpts from the record reflecting that Mrs. Tyrrell was well aware of Mr. Tyrrell's activities and that in negotiating the exchange of property he acted for both of them at all times—her own testimony provides ample evidence to support the oral agency. ■ But an oral agency is not enough; it is settled that Civil Code, section 1624, subdivision 4, and Civil Code, section 2309, requiring an agent's authority to convey real property to be expressed in writing, apply to an agency between a husband and wife. (*O'Banion* v. *Paradiso,* 61 Cal.2d 559, 563 [39 Cal.Rptr. 370, 393 P.2d 682].) ■ It is equally true that the requirement of a writing is met if an oral agency to deal with real property is ratified by a writing. (Civ. Code, § 2307.)

■ Here, the wife signed escrow instructions that embodied and implemented the prior exchange agreement entered into by her husband-agent. Additionally, she signed a joint tenancy deed conveying the real property to the Canos in accordance with the exchange agreement, and delivered it to the escrow agent. She also signed various other documents

necessary to complete the agreement. Thus there is evidence sufficient to support the finding of the trial court that Mrs. Tyrrell approved, in writing, the property exchange agreement.

Appellants argue that the action was not to specifically enforce the escrow instructions but the prior property exchange agreement which differed slightly from the escrow agreement. We deem this immaterial, as modifications of the original agreement embodied in the escrow agreement were minimal and, in any event, Mr. Tyrrell was as much the agent of Mrs. Tyrrell in agreeing to modification of the agreement as he was in making the agreement in the first place. By signing the escrow agreement, deed, and deed of trust, Mrs. Tyrrell ratified in writing the agreement which had been modified by her husband and the Canos.

Another line of reasoning leads to the same result. In *Karl* v. *JeBien,* 231 Cal.App.2d 769 [42 Cal.Rptr. 461], an agreement was executed by a husband, purportedly as the agent of his wife although no agency was created in writing. Thereafter an escrow was entered into and the wife executed a deed in fulfillment of the escrow requirements. The court said, at page 773: ". . . Mrs. JeBien put at her husband's disposition a signed and acknowledged deed, which she never attempted to withdraw or revoke although she knew of the use he was making of it. In this situation, we hold her signature of the deed to be an adequate memorandum of the transaction." The court pointed out that in *O'Banion* the wife signed nothing, while Mrs. JeBien signed a deed, entrusted it to her husband for disposition, and never repudiated his deposit of it in escrow. Thus she was estopped to deny her husband's authority to deliver the deed.

By parallel reasoning, the doctrine of estoppel applies here with equal force, perhaps with even greater force since Mrs. Tyrrell not only knew about the transaction and that Mr. Tyrrell was negotiating on her behalf as well as for himself, but she went a step further than Mrs. JeBien by signing escrow instructions. Consequently Mrs. Tyrrell is estopped from denying that her writings constituted a ratification of her husband's agency and of the agreement entered into on her behalf.

### FRAUD AND MISREPRESENTATION

Appellants contend they relied upon and were deceived by false representations on the part of the Canos as to

the condition of their property. They assert the Canos represented that their rest home consisted of six bedrooms, each useable for rest home purposes. The court found against appellants on this issue, and they attack the sufficiency of the evidence to support the finding.

The controversy stems from a sentence in the exchange agreement which describes the Cano property as "A 6 bedroom home operated as a rest home, including furniture." The court found: "That the said Cross-Defendants Favian Cano, Bonnie Cano, Clifton Faris and Louis Ginise represented that the property in Paragraph I above described had six bedrooms. That in truth and in fact said property did have six bedrooms which were then and there pointed out and shown to the Defendant and Cross-Complainant E. C. Tyrrell. That neither the Plaintiff and Cross-Defendants Favian Cano and Bonnie Cano or the Cross-Defendants Clifton Faris or Louis Ginise or any of them ever represented to the Defendant and Cross-Complainant E. C. Tyrrell that there were six bedrooms each of which could be used for resthome rooms. That on the 14th day of April, 1964 said property described in Paragraph I above was up to the standards required by the health, building and fire safety departments of the City of Woodland. That on the 14th day of April, 1964 the two rooms in the back of said premises were in a condition that permitted their continued use as living quarters for the owners and/or managers of said premises described in Paragraph I above."

The trial court's finding that there was no misrepresentation by the Canos as to the nature or the condition of their property finds support in the following evidence. Mr. Tyrrell, an experienced building contractor, met Ginise, the real estate agent, at the Cano property in April 1964. At that time he inspected the main building, both downstairs and upstairs, although he did not open some of the doors to the downstairs bedrooms lest he disturb elderly guests. Mr. Tyrrell admitted that no one ever specifically represented to him that there were six bedrooms downstairs. Mrs. Cano went even further in her testimony; she said that when she accompanied Mr. Tyrrell on his inspection of the downstairs area of the rest home, she told him there were five bedrooms downstairs, three double and two single, and one bedroom upstairs which could not be used for guests since elderly people cannot climb the stairs. Furthermore, Tyrrell obtained a report on the condition of the building from the city inspector, after which he conferred with Ginise and the Canos about repairs that need-

ed to be made. He agreed to changes to the upstairs bedroom, knowing that if brought up to building specifications for a bedroom it could not be used for a rest home bedroom. He also agreed to Canos' offer to make improvements to bring the two bedrooms in the garage up to the mark. These events occurred nearly two months before Tyrrell had his attorney serve a notice of rescission upon the Canos.

In addition to the testimony adduced during the trial, the court viewed the property pursuant to stipulation of counsel. The court's observations are evidence in the case and must be viewed as supporting the findings, at least as to the physical characteristics of the property. (*Consolidated Rock Products Co.* v. *City of Los Angeles*, 57 Cal.2d 515, 532 [20 Cal.Rptr. 638, 370 P.2d 342].)

Appellants assert the above finding is incomplete, and contend the court erred in denying their request for more extensive findings as to each separate bedroom and its possible uses. However, the ultimate facts are covered by the finding, namely, that the property conformed to the exchange agreement and that neither the Canos nor the real estate agent, Ginise, represented to the Tyrrells that there were six bedrooms each of which could be used for rest home purposes.

■ A request for special findings under Code of Civil Procedure section 634 does not require a trial court to make supplemental or explanatory findings on evidentiary matter, particularly where the requested findings are, as here, directly contrary to the facts as found by the court. (*Coleman Engineering Co.* v. *North American Aviation, Inc.*, 65 Cal.2d 396, 410 [55 Cal.Rptr. 1, 420 P.2d 713].)

EVIDENCE OF ACTS OCCURRING AFTER FILING OF ACTION

■ Appellants assert that evidence of their acts in relation to the property, occurring after notice of rescission and filing of suit, were improperly received in evidence. Had proper objection been made, the court would have been under a duty to exclude some of the evidence as it related to an offer by Tyrrell to settle the dispute. There was testimony of other acts by Tyrrell, however, which acts were inconsistent with the preceding notice of rescission, and to the extent they constituted independent acts not directly related to an offer of compromise, such evidence was admissible. But no attempt need be made to unravel the admissible from the inadmissible evidence in the conglomerate record since all of the evidence to which appellants now object was elicited from a number

of witnesses, without objection, and therefore it is competent evidence. (Witkin, Cal. Evidence (1958) p. 1207.)

Near the end of the trial, appellants did object to a question that was clearly inadmissible under former section 2078 of the Code of Civil Procedure, as it related to an offer of compromise. The objection was sustained, but no motion to strike prior evidence of this character was made, although appellants' counsel said it should not have been received. There could be no error, in any event, as the trial judge voluntarily remarked that since there was no jury he would disregard any evidence of an offer to compromise. We must assume that the trial judge followed his gratuitous self-admonition in considering the evidence and arriving at his findings of fact. (*Bixby* v. *Bixby*, 120 Cal.App.2d 495, 499 [261 P.2d 286].)

### CIRCUMSTANCES WHICH APPELLANTS ASSERT PREVENT SPECIFIC PERFORMANCE

Appellants contend specific performance is impossible because the loan on their property, that is the construction loan they placed against the property in order to build a rest home, is greater than the amount of the deed of trust the Canos agreed to assume upon the exchange of property. Under the agreement, the Canos were to assume a loan of $45,500, 70 percent of the agreed value, while appellants borrowed $50,000 which now stands as a lien against the property.

As the court found, it was the unilateral act of Tyrrell in boosting his loan that caused the deed of trust to exceed the amount agreed upon. Consequently the court quite properly decreed that appellants reduce the lien to conform to the agreement.

### INDISPENSABLE OR NECESSARY PARTY

Appellants use the terms "indispensable party" and "necessary party" interchangably in arguing that failure to join Guarantee Savings & Loan Association as a party requires a reversal. The terms are not synonymous either as to definition or the effect of failing to join such party. An indispensable party and a conditionally necessary party are defined in Code of Civil Procedure, section 389, as follows:

"A person is an indispensable party to an action if his absence will prevent the court from rendering any effective judgment between the parties or would seriously prejudice any party before the court or if his interest would be in-

equitably affected or jeopardized by a judgment rendered between the parties.

"A person who is not an indispensable party but whose joinder would enable the court to determine additional causes of action arising out of the transaction or occurrence involved in the action is a conditionally necessary party."

 Guarantee was not a party to the property exchange agreement, the subject of the specific performance action, nor did the agreement require Tyrrell to obtain his construction loan through Guarantee or any particular lending agency. Hence Guarantee was not an indispensable party to the action for specific performance of the exchange agreement.

On the other hand, Tyrrell obtained a construction loan on his property from Guarantee after the exchange agreement was executed. Before the agreement can be carried into effect Tyrrell must either reduce the obligation to Guarantee to meet the terms of the property exchange agreement or refinance the loan through another lending agency. Under these circumstances, Guarantee is a "conditionally necessary party" within the sense of section 389.

Whether failure to bring in a conditionally necessary party requires a reversal is governed by rather flexible rules. In *Bank of California* v. *Superior Court*, 16 Cal.2d 516, the court, in discussing necessary parties, said at page 523 [106 P.2d 879] : "They should normally be joined, and the court, following the equity rule, will usually require them to be joined, in order to carry out the policy of complete determination and avoidance of multiplicity of suits. But, since the rule itself is one of equity, it is limited and qualified by considerations of fairness, convenience, and practicability."

 We conclude that equitable considerations here preclude a holding that failure to join Guarantee constituted reversible error. In the first place, had appellants raised this question in the trial court, the matter could have been disposed of before trial. Now that the case has been tried, we believe the objection comes too late and that it has been waived by failure to object before or during trial. (See *Webb* v. *Casassa*, 82 Cal.App. 307, 313 [255 P. 541].) Secondly, Mr. Wylie, an official of Guarantee Savings & Loan Association of Yolo, testified in response to the following question: "If this were transferred on a basis of $65,000.00 and the balance of this loan were reduced to approximately $45,000 or $45,500.00, the property being transferred to the Canos—and there was nothing detrimental found in your credit check or credit

analysis of them, Guarantee Savings and Loan would have no objection to that transfer or to consenting to an assumption agreement by the Canos, would they? A. None, whatsoever.''

It appears, therefore, that failure to join Guarantee Savings & Loan Association will not prevent specific performance of the exchange agreement.

Furthermore, the court retained jurisdiction in order to completely dispose of the matter. This permits additional proceedings if necessary, a circumstance within the rationale of Code of Civil Procedure, section 389, which provides: ''If, after additional conditionally necessary parties have been brought in pursuant to this section, the court finds that the trial will be unduly complicated or delayed because of the number of parties or causes of action involved, the court may order separate trials as to such parties or make such other order as may be just.''

Since the court can bring in a conditionally necessary party under section 389, and order a separate trial if his interests are separable from those of the parties, there is no logical reason why Guarantee's interest cannot now be litigated separately if necessary. The court has retained jurisdiction, and the effect of a separate trial as to Guarantee at this point would be no different from bringing in Guarantee at the pleading stage and ordering separate trials.

### EVIDENCE OF VALUE

Appellants argue that there is no evidence upon which the trial court could predicate its finding of adequacy of consideration. Values were not introduced for the purpose of proving adequacy of consideration as such, but value evidence was elicited for other purposes. The parties, the real estate agent, and an officer of Guarantee Savings & Loan testified as to values in connection with other issues. This evidence could be, and apparently was, considered by the court in arriving at the finding that the exchange of properties was based upon fair and adequate consideration. Unless evidence is admitted for a limited purpose or against one party, it may be considered by the trier of fact in determining any issue to which the evidence is related. (Evid. Code, §§ 351, 355; Witkin, Cal. Evidence (1958) p. 280.)

Although the court's memorandum opinion states that the consideration is adequate; the findings use the language ''just and reasonable.'' We conclude this finding is tantamount to a finding of adequacy of consideration and is

sufficient to support the judgment decreeing specific performance.

### ISSUES RAISED BY CROSS-COMPLAINT

There remains appellants' objection to that part of the findings and judgment determining the manner of payment of the real estate commission. Appellants argue that in the complaint for specific performance the Canos did not raise payment of the real estate commission as an issue. It is also true that the agreement for exchange did not provide for the payment of a commission, but appellants, in their cross-complaint, raised the issue of fees by naming the real estate broker and the agent as parties, and seeking relief against them. The court simply disposed of an issue raised by appellants themselves. (See *Veale* v. *Piercy*, 206 Cal.App.2d 557, 567 [24 Cal.Rptr. 91]; *McKeon* v. *Santa Claus of Cal., Inc.*, 230 Cal.App.2d 359, 364-365 [41 Cal.Rptr. 43].)

The judgment is affirmed.

Conley, P. J., and Gargano, J., concurred.

A petition for a rehearing was denied January 8, 1968, and appellants' petition for a hearing by the Supreme Court was denied February 8, 1968.