Thomas E. CURRAN, Jr. and Mary Jane
Curran, Appellants,

v.

Hermann J. HASTREITER and Daniel T.
Zantek, Individually and d/b/a Hastreit-
er-Zantek and Company, Appellees.

Hermann J. HASTREITER and Daniel T.
Zantek, Individually and d/b/a Hastreit-
er-Zantek and Company, Cross-Appel-
lants,

v.

Thomas E. CURRAN, Jr. and Mary Jane
Curran, Cross-Appellees.

Nos. 3026, 3071.

Supreme Court of Alaska.

May 19, 1978.

Janalee R. Strandberg and John S. Hedland, Rice, Hoppner & Hedland, Anchorage, for appellants and cross-appellees.

James A. Parrish, Parrish Law Office, Fairbanks, for appellees and cross-appellants.

Before BOOCHEVER, C. J., RABINOWITZ, J., and BUCKALEW, Superior Court Judge.

RABINOWITZ, Justice.

Appellant Mary Jane Curran brings this appeal from the superior court's judgment which granted the claim of Hastreiter and Zantek for specific performance compelling appellant to convey an individual 49 per cent interest in certain commercial real property located in close proximity to the Alyeska Ski Resort in Girdwood, Alaska.[1] The claim of Hastreiter and Zantek was based on an oral agreement. Appellees Hastreiter and Zantek have cross-appealed from the superior court's failure to award attorney's fees to them as the prevailing parties.[2]

Hastreiter and Zantek, who are masonry workers and musical performers, and Mr. and Mrs. Curran, who were owners of the land in the Girdwood-Alyeska area, planned together to develop several of the Currans' properties. In the course of planning the details regarding these projects, the parties discovered that the Currans' sublease on one of the properties (hereinafter referred to as the "commercial property") was encumbered by covenants and restrictions which, unless removed, would preclude development of that property consonant with the parties' hopes. The issue on appeal is the correctness of the following findings and conclusions of the superior court: that Mr. Curran offered to convey to appellees a 49 per cent interest in the commercial property if Hastreiter and Zantek were able to secure the necessary signatures on a waiver of the restrictions; that the contract was formed when appellees obtained the waiver and is not rendered unenforceable by the statute of frauds; and that Mrs. Curran, who is now Mr. Curran's widow, is bound by the agreement and must convey the interest.

It is established that a party seeking specific performance of an oral contract to convey an interest in real property must, in addition to adducing evidence taking the agreement out of the statute of frauds, prove a contract sufficiently definite and certain in its terms to warrant the grant of specific performance.[3] Where the existence of an oral contract and the terms thereof are contested and the evidence is conflicting, it is for the trier of fact to determine whether the contract did in fact exist and, if so, the terms of such contract.[4] In addition, a party who challenges the sufficiency

---

1. Mr. Curran died prior to the commencement of trial. As used herein, the term "appellant" refers only to Mrs. Curran.

2. At trial, appellees additionally sought a decree of specific performance compelling appellant to convey a 50 per cent interest in property known as the Barnes property, damages for the Currans' refusal to convey the interests in the two properties, and money allegedly owed for work performed on the construction of two cabins for the Currans. With respect to the cabins, the Currans alleged in a counterclaim that appellees' delay and improper construction caused a loss of rental income to the Currans. The trial court ruled against appellees' claim

with respect to the Barnes property, against their claim for damages for delay in conveyance, and against their claim for work performed on the cabins. The court also ruled against appellant's counterclaim. Only the ownership of the commercial property is at issue on appeal.

3. *Jackson v. White,* 556 P.2d 530, 533 (Alaska 1976); *Prokopis v. Prokopis,* 519 P.2d 814 (Alaska 1974).

4. *B. B. & S. Constr. Co., Inc. v. Stone,* 535 P.2d 271, 273 (Alaska 1975); *Nordin v. Zimmer,* 373 P.2d 738, 741–42 (Alaska 1962).

of the evidence supporting a trial court's finding of fact must demonstrate that the questioned finding is "clearly erroneous."[5] Where, as in the case at bar, the superior court's decision depends largely on oral testimony and on inferences to be drawn from such testimony, this court must give due regard to the trial court's opportunity to evaluate the credibility of witnesses.[6] In carrying out our appellate review functions, we are required to take the view of the

evidence most favorable to the prevailing party at trial.[7]

■ Application of these principles has led us to the conclusion that appellant Curran has demonstrated neither that the superior court's conclusions of law are erroneous,[8] nor that the underlying findings of fact—relating to the issue of an oral contract to convey an undivided interest in the commercial property—are clearly erroneous.[9] Viewing the evidence in the light

5. Civil Rule 52(a) provides, in part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge . . . the credibility of the witnesses." *See Chugach Elec. Ass'n v. Northern Corp.,* 562 P.2d 1053, 1060 n. 22 (Alaska 1977); *State v. Abbott,* 498 P.2d 712, 727 (Alaska 1972); *Alaska Foods, Inc. v. American Mfr.'s Mut. Ins. Co.,* 482 P.2d 842, 848 (Alaska 1971).

6. *Frontier Saloon, Inc. v. Short,* 557 P.2d 779, 782 (Alaska 1976); *Kenai Power Corp. v. Strandberg* 415 P.2d 659, 660 (Alaska 1966).

7. *Jackson v. White,* 556 P.2d 530, 533 (Alaska 1976).

8. In this regard, the superior court entered, in part, the following conclusions of law:

3. The statement of Thomas E. Curran, Jr., that the plaintiffs could acquire a 49% interest in the 'commercial' property, by obtaining certain signatures on a waiver agreement to be prepared by him, manifested an intent to be bound upon the performance of the described act by plaintiffs. As such, the statement was an offer which, if accepted prior to revocation, would ripen into a unilateral contract.

4. Upon completion of the performance called for by the offer, a contract was formed between the parties whereby the plaintiffs became entitled to a conveyance of a 49% undivided interest in the commercial property.

. . . . .

10. Plaintiffs are entitled to a decree of specific performance requiring Mary Jane Curran to convey to them, as tenants in common, an undivided 49% interest in the 'commercial' property, such property being more particularly described in the court's finding of fact.

9. The most significant findings of fact articulated by the superior court in support of its conclusion that Hastreiter and Zantek had established a claim for specific performance are as follows:

14. On July 9, 1972, Mr. Curran acquired an additional interest in land hereinafter de-

scribed as the 'commercial' property. Such interest was acquired by virtue of an assignment of a long term sublease. By the terms of the assignment, the Currans acquired their interest in the property as tenants by the entireties.

15. The 'commercial' property is more particularly described as Lot One (1), Block Two (2), North Addition # 1, to Alyeska Subdivision, according to Plat 68–95; being within the Anchorage Recording District, Third Judicial District, State of Alaska.

16. During the purchase of the sublease in the 'commercial' property, the parties discussed the future development of such property and prior to the Currans' payment of the full purchase price Hastreiter and Zantek offered to pay for one-half of the same. Their offer was declined.

17. At the time of the purchase of the 'commercial property,' such property was subject to certain covenants and restrictions that would impede its development along the lines envisioned by all of the parties. Such restrictions were discussed on several occasions and there was general agreement among all of the parties that if they could be removed, by obtaining a waiver from those third parties entitled to enforce the same, the commercial property would increase substantially in value.

18. Due to their popularity in the Alyeska area, it was believed that Mr. Hastreiter and Mr. Zantek might be better able to obtain a waiver than would the Currans.

19. During the late summer and fall of 1972 there were several discussions between the parties concerning the obtaining of the desired waiver. Mr. Curran spoke on behalf of the defendants, but Mrs. Curran was often present during such discussions.

20. Mr. Curran informed the plaintiffs that if the plaintiffs could obtain the required signatures on a waiver of restrictions, to be prepared by Mr. Curran, Hastreiter and Zantek would received a 49% interest in the above described 'commercial' property.

21. Thereafter, several forms of waiver agreement were prepared by Mr. Curran and presented to the necessary third parties by

most favorable to the prevailing parties below, the record contains evidence more than ample to sustain the superior court's determination that an oral contract for the conveyance of an undivided 49 per cent interest in the commercial property was proven. Inherent in our determination that the superior court's findings relating to the issue are not clearly erroneous is our rejection of appellant's argument that there was no separate agreement to convey an interest in the commercial property to Hastreiter and Zantek.[10]

Appellant next argues that the superior court erred in concluding that the statute of frauds was not a bar to the claim of Hastreiter and Zantek for specific performance of the oral contract to convey an interest in the commercial property. The superior court concluded that since Hastreiter and Zantek had "fully performed in accordance with the . . . [appellants'] offer, the contract between the parties is enforceable despite the absence of a written memorandum thereof. Thus, the Statute of Frauds is not a bar to the plaintiffs' action for specific performance."

Since the case at bar concerns an oral contract to convey an interest in property, the statute of frauds is implicated.[11] Appellant Mary Jane Curran invokes the statute insofar as it requires written evidence of Thomas Curran's agency on her behalf.[12]

---

Mr. Hastreiter and Mr. Zantek. All such proposals were rejected.

22. Finally, on October 31, 1972, a modified form of waiver agreement, again prepared by Mr. Curran, was deemed acceptable by all concerned and plaintiffs obtained the necessary signatures.

23. By such action, the plaintiffs fully performed all that was required of them under the terms of Mr. Curran's offer.

24. Mr. Curran's offer was never revoked prior to the plaintiffs' acceptance thereof by performance of the act called for by such offer.

25. Plaintiffs' belief that Mr. Curran's proposal was a bona fide offer to convey a 49% interest in the 'commercial' property, in return for their obtaining the required signatures, was reasonable under the circumstances.

26. Although the waiver agreement upon which plaintiffs finally obtained the required signatures was less satisfactory to the parties than the earlier proposals prepared by Mr. Curran, Mr. Curran never indicated any intention to revoke or modify the terms of his own offer prior to the plaintiffs' acceptance thereof by their performance in obtaining the necessary signatures.

10. Appellant argues that the sole agreement between the parties was eventually to create a business association whose purpose would be to develop and manage commercial facilities on the Currans' land. To that association the Currans would contribute property, and appellees would contribute their construction and managerial skills. The consideration for appellees' interest in the business association would be their construction of facilities at cost and their subsequent management of such facilities. Obtaining the waiver was merely a first step in this process rather than consideration for a separate agreement. Although this argument is consistent with Mrs. Curran's testimony, it is inconsistent with the bulk of appellees' and Mrs. Zantek's testimony.

Appellant presents an alternative argument in support of her assertion that the superior court erred in finding that an offer by Mr. Curran to convey an interest in the commercial property if appellees could secure the signed waiver agreement. Appellant contends that if an offer to convey an interest in property had been made, the value of appellees' labor on their work performed in the construction of the cabins was partial consideration for that interest. Arguing that appellees are precluded by AS 08.18.151 from being compensated for their general contracting work on the cabins, appellant concludes that appellees only partially performed their obligations by obtaining the waiver agreement and therefore are not entitled to specific performance.

Our holding that the superior court's findings of fact were not clearly erroneous disposes of this alternative argument.

11. AS 09.25.010(b) states in relevant part:

No estate or interest in real property, other than a lease for a term no[t] exceeding one year, nor any trust or power concerning the property may be created, transferred, or declared, otherwise than by operation of law, or by a conveyance or other instrument in writing subscribed by the party creating, transferring, or declaring it or by his agent under written authority and executed with the formalities that are required by law.

12. Sec. 09.25.010 provides in relevant part:

(a) In the following cases and under the following conditions an agreement, promise, or undertaking is unenforceable unless it or some note or memorandum of it is in writing and subscribed by the party charged or by his agent:

.    .    .    .    .

The superior court determined that an exception to the statute of frauds applied in the instant case because appellees had "fully performed in accordance with the [Currans'] offer." In this regard, AS 09.25.020 provides:

> *Exceptions of statute of frauds.* A contract, promise, or agreement which is subject to § 10 of this chapter, which does not satisfy the requirements of that section, but which is otherwise valid is enforceable if
>
> (1) there has been full performance on one side accepted by the other in accordance with the contract . . . .

This proviso, by referring to AS 09.25.010,[13] applies equally to the requirement of written evidence of agency and to the general requirement of written evidence of a contract for the transfer of an interest in real property.[14] Having reviewed the conflicting evidence and evaluated the parties' demeanor and credibility, the superior court concluded that an offer to convey an undivided one-half interest in the Currans' commercial property was made; and that upon securing the required waiver agreement, appellees accepted that offer and fully performed their obligations under the offer. The superior court's findings of fact do not explicitly cover the question of whether Mary Jane Curran accepted Hastreiter and Zantek's performance for purposes of determining whether the exception to the Statutes of Frauds contained in AS 09.25.020(1) is applicable.

The requirement of a writing contained in AS 09.25.010(a)(7)[15] is found in the statutes and case law of numerous other jurisdictions.[16] In California, this requirement of written agency has been specifically applied to husband and wife situations. In *O'Banion v. Paradiso,* 61 Cal.2d 559, 39 Cal. Rptr. 370, 373, 393 P.2d 682, 685 (Cal.1964), the court stated, in part:

> Was Mrs. Orduno's oral assent to her husband's written memorandum sufficient to satisfy the statute of frauds although she never signed the memorandum or any document authorizing her husband to act on her behalf?
>
> No. An agreement for the sale of real property is invalid unless it is in writing. (Civ.Code, § 1624, subd. 4.) Since authority to enter into a contract which is required to be in writing can be given only by an instrument in writing (Civ.Code, § 2309), any contract by a husband affecting the wife's interest in land is unenforceable against her in the absence of a written authorization signed by the wife, there being no husband-wife exception to the statute of frauds. (Cf. *Henry v. Nelms,* 113 Cal.App. 587, 591, 298 P. 822; *Glazer v. Hanson,* 98 Cal.App. 53, 59[2], 276 P. 607. (emphasis deleted) [17]

Although the language of AS 09.25.020(1), "there has been full performance on one side accepted by the other in accordance with the contract," is sufficiently broad to suggest that acceptance by the agent is sufficient, we think the proper construction requires that the acceptance must be by the principal before the exception provided for in AS 09.25.020(1) is applicable to AS 09.25.010(b) (*i. e.,* agreements concerning real property by an agent). We therefore conclude that this aspect of the case must be remanded to the superior court for the entry of appropriate findings of fact and conclusions of law concerning the question of whether Mary Jane Curran

---

> (7) an agreement concerning real property made by an agent of the party sought to be charged unless the authority of the agent is in writing . . . .

**13.** *See* note 12, *supra.*

**14.** *See* note 11, *supra.*

**15.** *See* note 12, *supra.*

**16.** *See e. g.,* Cal.Civ.Code § 1624(4); Ore.Rev. Stat. § 41.580(6); *In re Estate of Boysen,* 218

N.E.2d 838, 841 (Ill.App.1966); *Rebman v. Reed,* 335 So.2d 37, 39 (La.App.1976); *Crane v. Kangas,* 53 Mich.App. 653, 220 N.W.2d 172, 173 (1974); *Wilcher v. McGuire,* 537 S.W.2d 844, 847 (Mo.App.1976); *Pettit v. Vogt,* 495 P.2d 395, 397 (Okl.1972); *Charles v. Henry,* 460 Pa. 673, 334 A.2d 289, 291 (1975).

**17.** *See also Cano v. Tyrell,* 256 Cal.App.2d 824, 64 Cal.Rptr. 522, 526 (1967).

accepted the performance of Hastreiter and Zantek.

■ Appellant further argues that the superior court erred in finding that appellant Mary Jane Curran participated in the offer allegedly made by Mr. Curran to appellees concerning the Currans' commercial party.[18] We have concluded that this contention of appellant must be rejected. Review of the record establishes the presence of abundant evidence to support the trial court's finding that "Mrs. Curran did in fact consent to and join in the offer made by Mr. Curran, whereby he agreed to convey a 49% interest in the 'commercial' property to the plaintiffs in the event that they were able to obtain the required signatures on the waiver agreement." Thus, we hold that this finding of the superior court was not clearly erroneous.

■ Appellant's final contention is that the superior court's findings with respect to the agency question do not comport with Civil Rule 52(a) and the concomitant duty of the trial court to make sufficiently detailed and explicit findings in order to give an appellate court a clear understanding of the basis for the trial court's decision and to enable it to determine the ground on which the trial court reached its decision.[19] In our view, this contention must be rejected because the superior court's findings of fact clearly indicate the evidence upon which it relied in reaching a decision.

■ In their cross-appeal, appellees contend that the superior court erred in failing to award attorney's fees to them as the prevailing party.[20] The superior court stated in its findings of fact that "[u]nder the circumstances, justice will best be served if each party bears [its] own costs and attorney's fees." The superior court gave no further indication of the rationale for its decision and did not indicate whether it considered either party to have been the prevailing party.[21] In these circumstances,

18. The following findings of fact pertain to appellants' participation in the offer:

> 28. Customarily Mr. Curran acted on behalf of both himself and Mary Jane Curran in the purchase of property and other business dealings.
>
> 29. The evidence of the past business dealings of Mr. and Mrs. Curran, together with the various items of correspondence introduced at the time of trial, establishes that Mr. Curran customarily acted as Mrs. Curran's agent in matters of business and that in this case he possessed both actual and apparent authority to act as her agent in his dealings with the plaintiffs.
>
> 30. Prior to the plaintiffs' performance in obtaining the required signatures on the waiver agreement, Mrs. Curran never expressed to the plaintiffs any limitation on her husband's authority to deal on her behalf.
>
> 31. Viewing the evidence as a whole it appears that Mrs. Curran did in fact consent to and join in the offer made by Mr. Curran, whereby he agreed to convey a 49% interest in the 'commercial' property to the plaintiffs in the event that they were able to obtain the required signatures on the waiver agreement.

The following conclusions of law are also relevant:

> 5. Mary Jane Curran was a party to said offer and is bound by the terms of the contract which was later formed.
>
> 6. Mary Jane Curran is estopped to deny the agency of her husband and his authority to act on her behalf with respect to the 'commercial' property.

19. *Wigger v. Olson,* 533 P.2d 6, 7–8 (Alaska 1975); *Graham v. Rockman,* 504 P.2d 1351, 1355 (Alaska 1972); *Merrill v. Merrill,* 368 P.2d 546, 548 (Alaska 1962).

20. Although appellees specify as error the superior court's failure to award both costs and attorney's fees, they request that the case be remanded only for a determination of attorney's fees. There is no indication in the record that appellees complied with Civil Rule 79(a) which requires a party seeking costs to serve on each of the other parties within 10 days after entry of judgment "a cost bill, together with a notice when application will be made to the clerk to tax costs." The rule also provides that "[f]ailure of a party to serve a cost bill and notice as required by this subdivision shall be construed as a waiver of his right to recover costs." Thus, appellees have apparently waived their right to costs. *See M–B Contracting Co., Inc. v. Davis,* 399 P.2d 433, 436–37 (Alaska 1965). In *M–B Contracting,* after invoking Rule 79(a) to bar consideration of an appeal as to costs, this court considered the separate issue of attorney's fees.

21. Civil Rule 82(a) provides that in cases where there is no monetary recovery, "attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion, in a reasonable amount." *See M–B*

we think *Cooper v. Carlson,* 511 P.2d 1305 (Alaska 1973), requires that this aspect of the case be remanded to the superior court. In *Cooper,* the superior court failed to specify who was the prevailing party and declined to award attorney's fees to either party. Cooper prevailed on every liability issue and was unsuccessful only in his argument that he was entitled to nominal damages on a counterclaim. Although he did not prevail on a subsidiary issue, we concluded that Cooper was the prevailing party because he had been successful with respect to the main issues in the action.[22] Noting that under Civil Rule 82(a) the superior court could have denied attorney's fees for valid reasons,[23] that the award of attorney's fees is discretionary with the trial judge, and that the award is reviewable on appeal only for abuse,[24] we remanded the case for a ruling as to attorney's fees and explained: "We are confronted with the difficulty of not knowing whether the court denied the fee in the exercise of its discretion or under the mistaken belief that Cooper was not the prevailing party."[25]

On the basis of the judgment which was entered, we conclude that appellees prevailed.[26] A balancing of the outcomes of the respective claims of the parties demonstrates the basis of our conclusions.[27] Thus, the issue of attorney's fees must be remanded to the superior court for an award of attorney's fees to appellees, or in the alternative, a further explanation of why appellees should not receive an attorney's fee.[28]

Affirmed in part and Remanded in part.

CONNORS, BURKE and MATTHEWS, JJ., not participating.

Contracting Co., Inc. v. Davis, 399 P.2d 433, 437 (Alaska 1965).

22. *Cooper v. Carlson,* 511 P.2d 1305, 1308 (Alaska 1973).

23. Reasons deemed valid in *Cooper v. Carlson,* 511 P.2d 1305, 1311 (Alaska 1973), include: a court's conclusion that the prevailing party interposed a counterclaim for the purpose of delay or confusion; a court's evaluation of the equities of the situation (*e. g.,* where the court enforces a contract which awards the prevailing party property of far more value than he has given in return and the losing party has presented a legitimately arguable claim); and a court's conclusion that a party "having prevailed on his highly favorable contract, should not also receive a 'pound of flesh.'" (footnote omitted)

24. *Cooper v. Carlson,* 511 P.2d 1305, 1309 (Alaska 1973).

An abuse of discretion is established where it appears that the trial court's determination as to attorney's fees was manifestly unreasonable. *Cooper v. Carlson,* 511 P.2d 1305, 1310 n. 6 (Alaska 1973); *Palfy v. Rice,* 473 P.2d 606, 613 (Alaska 1970).

25. *Cooper v. Carlson,* 511 P.2d 1305, 1311 (Alaska 1973).

26. A party may be the "prevailing party" if he is successful with regard to the "main issue in the action." *Alaska Placer Co. v. Lee,* 553 P.2d 54, 63 (Alaska 1976).

Appellees contend that the dispute over the commercial property was the "central focus of the litigation." This characterization underassesses the amount of trial time expended on the dispute concerning the cabins and Barnes' property. However, if there was a "main issue" in this case, it was indeed the ownership of the commercial property.

27. Appellees sought a 49 per cent interest in the commercial property which was purchased for $25,000 (this figure does not take into account the property's increased value due to appellees' obtaining the waiver), a 50 per cent interest in the Barnes property which was purchased for $11,000, damages in an unspecified amount and approximately $1,050 for work performed on the cabins. Appellant resisted these claims and counterclaimed for $2,000 for lost rental value on the cabins. Appellees successfully recovered an interest worth approximately $12,250, and appellant successfully resisted a claim to an interest worth approximately $4,500. The damage claims roughly offset each other.

28. If, upon remand, the superior court determines that Mary Jane Curran did not accept the performance of Hastreiter and Zantek, then appellees would not be the prevailing parties.