Harold F. GODWIN, Petitioner,

v.

The UNITED STATES of America, Respondent.

Misc. No. 83–4.

United States District Court, D. Delaware.

May 11, 1983.

Charles Gruver III, of Bayard, Brill & Handelman, P.A., Wilmington, Del., for petitioner.

Joseph J. Farnan, Jr., U.S. Atty., Peggy L. Ableman, Asst. U.S. Atty., Wilmington, Del., Glenn L. Archer, Jr., Asst. Atty. Gen., S. Martin Teel, Jr. and Robert L. Gordon, Attys., Tax Div., Dept. of Justice, Washington, D.C., for respondent.

## OPINION

LATCHUM, Chief Judge.

This matter is before the Court upon the petition [1] of Harold F. Godwin ("taxpayer"), filed pursuant to 26 U.S.C. § 7609(b), to quash ten Internal Revenue Service ("IRS") summonses [2] and the cross motion of the United States ("respondent"), filed under 26 U.S.C. § 7609(h), for summary denial of petitioner's motion to quash three of the summonses and for summary enforcement of the seven other summonses. [3]

### I. Background Facts

Between January 13, 1983 and February 1, 1983, Ronald J. Poplos, a special agent with the IRS, Criminal Investigation Division, issued ten summonses to obtain information for an investigation into the tax liabilities of the taxpayer. Four of the summonses were issued to two accountants, [4] three were issued to financial institu-

---

1. While the taxpayer styled his original pleadings as "motions" to quash, it is apparent he intended these motions to initiate a judicial proceeding under 26 U.S.C. § 7609(b) and the United States has responded to them as if they had been styled petitions.

2. Docket Item ["D.I."] 1, 3 & 4.

3. D.I. 5 & 6.

4. Summonses were issued to Carolyn Fausnaugh, CPA (2 summonses) and to Richard Blohm and General Business Services (2 summonses). (D.I. 1 & 4.)

tions,[5] and three were issued to the taxpayer trading as The Village Market, trading as Godwin's Silverbrook Arco, and as President of Godwin Enterprises, Inc.[6]

## II. Respondent's Motion For Summary Denial Of Taxpayer's Petition To Quash The Three Summonses Issued To Him As Representative Of His Three Business Enterprises

■ As stated above, the taxpayer's petition to quash the summonses issued to him as the representative of his three solely owned businesses, viz., the Village Market, Godwin's Silverbrook Arco and Godwin Enterprises, Inc., is based on 26 U.S.C. § 7609(b).[7] However, it is clear that the taxpayer lacks standing to quash these summonses. The provisions of Section 7609(b), permitting a taxpayer to begin a proceeding in an appropriate United States District Court to quash an IRS summons, applies only to a summons issued to a "third-party recordkeeper," as defined in Section 7609(a)(3), for records of the business transactions or affairs of a person other than the summoned party. 26 U.S.C. § 7609(a)(1)(A & B). The three summonses issued for records of the taxpayer's three solely owned businesses do not fall within the purview of Section 7609. They are not summonses directed to "third-party recordkeepers." Consequently, the taxpayer does not have standing to quash those three summonses under Section 7609 and the respondent's motion for summary denial of the taxpayer's petition to quash those three summonses will be granted.[8]

## III. Summary Enforcement Of Third-Party Recordkeeper Summonses

This Court has jurisdiction over taxpayer's petitions to quash the seven summonses

issued to the two accountants and the three financial institutions, all third-party recordkeepers, as defined in 26 U.S.C. § 7609(a)(3), by reason of the new procedure set forth in Section 7609(b), as amended by the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 324 ("TEFRA").

■ Sections 7609 and 7602, as amended by TEFRA,[9] brought important changes to the procedures for the enforcement of IRS summonses. Of especial importance to this case are two of these changes: first, TEFRA changed the type of proceeding in which enforcement of a third-party recordkeeper summons is litigated, and second, it replaced the vague solely-criminal purpose defense with a "bright line" test under which a summons may be issued for a criminal purpose as long as there was no "Department of Justice referral." However, these two changes did not alter the showing required by the government to establish a *prima facie* case for the enforcement of the summons and did not otherwise alter the general summary nature of summons enforcement proceedings.

Section 331 of TEFRA, 96 Stat. at 620, amended 26 U.S.C. § 7609 to reverse the format of enforcement proceedings concerning third-party recordkeeper summonses. Prior to TEFRA, when the IRS summoned records of a taxpayer from a "third-party recordkeeper," such as a bank or securities broker, the affected taxpayer could stay the recordkeeper's compliance with the summons simply by notifying the recordkeeper in writing that the taxpayer did not wish the recordkeeper to comply with the summons. S.Rep. No. 494, 97th Cong., 2d Sess. 281, *reprinted in* 1982 U.S.Code Cong. & Ad.News, 781, 1027. The burden of initiating an action to enforce the summons

---

5. Summons were issued to Carl Buffington of Wilmington Trust Company; Caroline Neal of Wilmington Savings Fund Society; and Harvey Gregg of Delaware Trust Company. (D.I. 3.)

6. D.I. 1.

7. D.I. 1, p. 1, par. 1.

8. At oral argument respondent's counsel represented that the government will shortly file petitions to judicially enforce those three summonses.

9. Section 331 of TEFRA, 96 Stat. at 620, amended 26 U.S.C. § 7609; Section 333 of TEFRA, 96 Stat. at 622, amended 26 U.S.C. § 7602, which is of importance to this case.

was then cast upon the United States. *Id.* Because this placed an unnecessarily heavy burden upon the United States, and because most summonses of this type were enforced without a contest at the district court level, Congress concluded that the burden of seeking review of the summons should be shifted to the taxpayer seeking to stay compliance by requiring such taxpayer to file a petition to quash enforcement of the summons. S.Rep. No. 494, *supra,* at 282–283, *reprinted in* 1982 U.S.Code Cong. & Ad. News 781, 1027–29. For this reason, 26 U.S.C. § 7609 was modified to permit the affected taxpayer to file a petition to quash in the district court within twenty days after the IRS has given notice to him of the service of the summons upon the third-party recordkeeper. Thus, the posture of the instant suit is one of a petition to quash the summons brought by the taxpayer rather than an action to enforce the summons brought by the government. The statute expressly authorizes the United States to seek enforcement of the summons in the taxpayer's proceeding.[10]

■ The Senate Report expressly stated that this modification of the format of summons enforcement proceedings was not to affect the substantive law of summons enforcement, except as amended in Sections 332 and 333 of TEFRA. *See* S.Rep. 494, *supra,* at 283, *reprinted in* U.S.Code Cong. & Ad.News 781, 1029. It is therefore clear that, except for specific changes, the pre-amendment law concerning the nature of the summons, the government's burden, the summary nature of the proceedings, the concomitant general unavailability of discovery, and the strict standards for stay of the Court's final judgment pending appeal are to remain unchanged. *Id.* at 283, 285, *reprinted in* U.S.Code Cong. & Ad.News 781, 1029–31. For this reason, the new form of proceeding does not affect the substantive law to be applied. The proceeding remains summary in nature, and the sum-

mons remains akin to a grand jury subpoena. *See United States v. Cortese,* 614 F.2d 914, 920 (3d Cir.1980). Consequently, the summons power should continue to be liberally construed in light of the purposes it serves. *See United States v. Euge,* 444 U.S. 707, 714–16, 100 S.Ct. 874, 879–881, 63 L.Ed.2d 141 (1980).

■ The standards for enforcing an IRS summons under prior law are well established. To make a *prima facie* case for enforcement, the government need only show: (1) that the investigation will be conducted for a legitimate purpose, (2) that the data sought is relevant to that purpose, (3) that the data being sought is not already in the IRS's possession, and (4) that the administrative steps required by the Internal Revenue Code with respect to a summons have been followed. *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964); *see United States v. LaSalle Nat'l Bank,* 437 U.S. 298, 313–14, 98 S.Ct. 2357, 2365–2366, 57 L.Ed.2d 221 (1978). "The requisite showing is generally made by the affidavit of the agent who issued the summons and who is seeking enforcement." *United States v. Garden State Nat'l Bank,* 607 F.2d 61, 68 (3d Cir. 1979) (citing *United States v. McCarthy,* 514 F.2d 368, 372 (3d Cir.1975)); *accord United States v. Will,* 671 F.2d 963, 966 (6th Cir. 1982). Indeed, "no more than [an affidavit] is necessary to make the *prima facie* case." *United States v. Kis,* 658 F.2d 526, 536 (7th Cir.1981), *cert. denied sub nom. Salkin v. United States,* 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982).

■ In support of its enforcement motion of the seven third-party recordkeeper summonses, the government filed a Declaration of Special Agent Ronald J. Poplos, the Treasury agent who issued the summonses and who is conducting the IRS tax investigation. (D.I. 5.) That declaration establishes all of the requisite standards, thereby

---

10. The taxpayer must serve the third-party recordkeeper with the petition to quash. The third-party recordkeeper may intervene in the proceeding but is bound by the decision whether or not it intervenes. Section 7609(b)(2)(C).

Although not required by the statute, the respondent has given the third-party recordkeepers notice of this motion for summary enforcement.

presenting to the Court a *prima facie* case for enforcement of the seven summonses.[11] The burden therefore falls upon petitioners to disprove the existence of a valid purpose or to show that enforcement of the summonses would be an abuse of the Court's process or otherwise would be improper. *E.g., United States v. Powell,* 379 U.S. at 58; 85 S.Ct. at 255; *United States v. LaSalle Nat'l Bank,* 437 U.S. at 316, 98 S.Ct. at 2367.

The taxpayer's petitions to quash assert two grounds for vacating the third-party recordkeeper summonses: (1) the summonses are unreasonably broad because they seek information concerning tax years 1978 and 1982, while the years under investigation are limited to 1979 through 1981; and (2) all the summonses were issued for an improper, namely, solely criminal, purpose.

■ The Court finds no merit to the taxpayer's first ground. As established by paragraph 11 of Special Agent Poplos' declaration, information relating to 1978 and 1982 is relevant to the investigation, because the taxpayer's solely owned corporation was on a fiscal year rather than a calendar year. As a result, the financial information, which was necessary to determine the taxpayer's individual calendar year tax liabilities, may be found in earlier and later fiscal year records of his corporation. Additionally, the information is relevant based on indirect methods of ascertaining income, the tracing of assets that reflect income or expenditures in the years under investigation, and the issue of willfulness. The reasons stated certainly meet the minimal showing that the information sought in 1978 and 1982 may be relevant to the investigation of taxpayer's tax liability for the years 1979 through 1981. *United States v. Egenberg,* 443 F.2d 512, 515–16 (3d Cir.1971); *see Holland v. United States,* 348 U.S. 121, 132–35, 75 S.Ct. 127, 133–135,

99 L.Ed. 150 (1954); *Angiulo v. Mullins,* 338 F.2d 820, 823 (1st Cir.1964).

■ The taxpayer's second ground for quashing the seven summonses is also insufficient as a matter of law because the old "criminal purpose" defense has been abolished by Section 333(a) of TEFRA, 96 Stat. at 622. A summons may now be issued under 26 U.S.C. § 7602(a)(1)–(3), for a "criminal purpose" by reason of amended Section 7602(b), which provides:

> (b) *Purpose May Include Inquiry Into Offense.*—The purposes for which the Secretary may take any action described in paragraphs (1), (2), (3) of subsection (a) include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.

A summons issued for such a purpose, like a summons issued for any other authorized purpose, is subject to the limitation contained in Section 7602(c), which provides in pertinent part:

> (c) *No Administrative Summons When There Is Justice Department Referral.*—
>
> (1) *Limitation of Authority.*—No summons may be issued under this title, and the Secretary may not begin any action under Section 7604 to enforce any summons, with respect to any person if a Justice Department referral [as defined in Section 7602(c)(2)] is in effect with respect to such person....

26 U.S.C. § 7602(c). This statutory changeover to a "bright line" test was made in large part to avoid the protracted litigation spawned by the prior vague and indefinite test announced in *United States v. LaSalle Nat'l Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221, of whether the agency had institutionally committed itself to refer a case for criminal prosecution. *Id.* at 318, 98 S.Ct. at 2368. S.Rep. No. 494, *supra,* at 285, *reprinted in* U.S.Code Cong. & Ad.News

---

**11.** The exhibit to D.I. 5 shows in detail: (1) that the summonses were issued in connection with an investigation of the taxpayer's federal income tax liabilities for the years 1979, 1980 and 1981 and to determine whether the taxpayer has violated any of the criminal provisions of the Internal Revenue Code (pars. 1 & 2); (2) that the data sought is relevant to this purpose (par. 11); (3) that the data sought is not already in the IRS's possession (par. 10); and (4) that the administrative steps required for an IRS summons have been followed (pars. 8 & 9).

781, 1030–31. Under TEFRA's "bright line" test, a summons issued for a "criminal purpose" is enforceable unless there has been a "Justice Department referral" as precisely defined in Section 7602(c)(2), which states:

> (2) *Justice department referral in effect.*—For purposes of this subsection—
> (A) *In general.*—A Justice Department referral is in effect with respect to any person if—
> > (i) the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws, or
> > (ii) any request is made under section 6103(h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103(b)) relating to such person.

26 U.S.C. § 7602. Paragraph 4 of the declaration of Special Agent Poplos clearly states that there has been no Department of Justice referral within the meaning of 26 U.S.C. § 7602(c)(2).[12] The agent's declaration also establishes, as noted above, a *prima facie* case under *Powell* for enforcing the seven third-party recordkeeper summonses.

■ Finally, the taxpayer, relying upon *United States v. Genser,* 582 F.2d 292 (3d Cir.1978) (*Genser I*), argues that he is entitled to conduct limited discovery in this case in order to show the invalidity of the summonses. Indeed, in *United States v. Genser,* 595 F.2d 146 (3d Cir.1979) (*Genser II*), the Court of Appeals explained that the complete and entire purpose of the limited discovery accorded to taxpayers was to provide a procedural mechanism to vindicate the substantive protections outlined in *United States v. LaSalle Nat'l Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221. *Genser II,* 595 F.2d at 152–53. As such, the Court of Appeals intended to supply a limited opening through which the taxpayer could attempt to ascertain whether any evidence used to convict him had been obtained by a summons that had been employed for solely criminal purposes and for which the IRS had institutionally abandoned any civil purpose. *Id.* at 151–52; *see United States v. Garden State Nat'l Bank,* 607 F.2d at 71. And quite pertinent to the instant case is the closing language in *Genser II,* where the Court stated:

> In the absence of congressional action defining the scope of the IRS's power to issue summonses, courts must continue to search for the vague boundary between civil and criminal investigation.

*Genser II,* 595 F.2d at 153 (emphasis added). As discussed above, however, there has been just such intervening congressional action with respect to IRS summonses. The "vague boundary between civil and criminal investigation" must no longer be searched out by district courts in the post-TEFRA period, because Section 333(a) of TEFRA both expanded the summons power to include inquiry into criminal violations of the internal revenue laws and substituted a "bright line" test for the "vague boundary" denoted in *Genser II.* Consequently, the trial court need only be assured that no "Justice Department referral" has taken place, as defined in amended Code Section 7602(c), in order to conclude that the summons is enforceable. In the present case, the agent's declaration establishes that there has been no such referral. Accordingly, the hypothetical indicia of institutional bad faith showing an abandonment of any civil purpose, which the *Genser II* discovery procedure was intended to identify, *see Garden State,* 607 F.2d at 711, are no longer relevant because the IRS may now issue summonses for solely criminal purposes. Thus, due to the congressional action reflected in TEFRA, the *Genser II* discovery mechanism is no longer necessary or appropriate.

Aside from the minimal discovery permitted on the criminal purpose defense (now rendered irrelevant by TEFRA), the Third Circuit held in *Garden State* that in order

---

12. D.I. 5, Ex. par. 4.

for the taxpayer to obtain discovery from the government in the course of a summons enforcement proceeding, the taxpayer must refute the government's *prima facie* case by specific evidence presented by way of affidavit. *Garden State,* 607 F.2d at 70. If no issue is created by the taxpayer, no discovery and no evidentiary hearing is required for disposal of the case. *Id.*

In the present proceeding, no issue has been created by the facts alleged in the taxpayer's petitions as a matter of law. Furthermore, "[a] statement in a brief or in oral argument does not constitute evidence." *Thornton v. United States,* 493 F.2d 164, 167 (3d Cir.1974). Consequently, on the present record, no purpose would be served by discovery in this case other than an occasion for the taxpayer to investigate the government.

■ It is well settled that a party opposing an IRS summons must come forward with specific facts, under oath, from his own resources, demonstrating that a triable issue exists on a legally sufficient defense, in order to justify an evidentiary hearing. *United States v. Harris,* 628 F.2d 875, 880–83 (5th Cir.1980); *United States v. Moon,* 616 F.2d 1043, 1047 (8th Cir.1980) (per curiam); *United States v. Freedom Church,* 613 F.2d 316, 319 (1st Cir.1979); *Garden State,* 607 F.2d at 70; *United States v. McGuirt,* 588 F.2d 419, 420–22 (4th Cir. 1978), *cert. denied,* 444 U.S. 827, 100 S.Ct. 52, 62 L.Ed.2d 35 (1979); *United States v. Morgan Guaranty Trust Co.,* 572 F.2d 36, 39–42 (2d Cir.1978), *cert. denied,* 439 U.S. 822, 99 S.Ct. 89, 58 L.Ed.2d 114 (1978); *United States v. McCarthy,* 514 F.2d 368, 372–73 (3d Cir.1975). The same authorities stand for the principle that no pre-hearing discovery is justifiable even in the case of a sufficient showing to justify an evidentiary hearing; the proper procedure then is to move directly to an adversary hearing and to determine at that time whether facts sufficient to justify post-hearing discovery have been adduced. *See United States v. Southern Tanks, Inc.,* 619 F.2d 54, 56 (10th Cir.1980).

In the instant case, the taxpayer has not produced any justification warranting either limited discovery or an evidentiary hearing. Accordingly, the Court will summarily enforce the seven third-party recordkeeper summonses.

An order will be entered in accordance with this opinion.