**In the Matter of the Internal Revenue Service Summonses Served Upon Bernard SEGMOND, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 83 Civ. 1312 (SWK).**

United States District Court, S.D. New York.

June 22, 1984.

Rogovin & Golub, by Benjamin J. Golub, New York City, for petitioner.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., by Leona Sharpe, Asst. U.S. Atty. New York City, for respondent.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

The above-captioned action is before this Court upon the petition of Bernard Segmond ("taxpayer") to quash seven summonses issued by the Internal Revenue Service ("IRS"), described more fully below, and upon the cross-motion of the respondent to enforce those summonses. For the reasons discussed below, the petition is denied and the cross-motion is granted.

## BACKGROUND

The IRS is conducting an investigation into, at the very least, the correctness of the income tax returns filed by Bernard Segmond for the tax years 1979, 1980, and 1981. Between February 1, 1983, and February 9, 1983, in furtherance of that investigation, IRS Special Agent Richard McQuade issued and served seven IRS summonses. Those seven summonses were as follows:

(*1*) a summons dated February 1, 1983, to Bernard Segmond, through his authorized attorney, Benjamin Golub, calling for testimony and the production of

1) Articles of Incorporation for Mr. Auction Inc.

2) Books and records for Mr. Auction Inc. including but not limited to cash disbursements, general ledgers, cash receipts and general journals, payroll records for FYE 4/30/79 thru 4/30/82

3) All Bank accounts for Mr. Auction Inc. to include monthly statements, cancelled checks, deposit slips, debit and credit memos

4) All agreements and contracts entered into between Mr. Auction Inc. and their suppliers, including a list of suppliers for which no contract exists

5) All bills and invoices submitted by Mr. Auction Inc. suppliers

6) Retained copies of Mr. Auction Inc. 1120 for FYE 4/30/79 thru 4/30/82

7) Retained copies of Bernard Segmond's individual 1040 for the year[s] 1979 thru 1981;

(*2 and 3*) a summons dated February 3, 1983, to Chemical Bank, and one dated February 4, 1983, to Dollar Savings Bank, calling for testimony and the production of

Any and all information relating to Bernard Segmond, Edith Segmond ... and Mr. Auction Inc. ... for all checking accounts, savings accounts, loans, mortgages and safe deposit boxes for 1979 thru 1981 including but not limited to the following items

1) New account application card

2) Bank statements

3) Cancelled checks

4) Deposit slips

5) Deposited checks

6) Correspondence file;

(*4*) a summons dated February 3, 1983, to Emigrant Savings Bank, calling for testimony and the production of

Any and all information relating to Bernard Segmond, Edith Segmond ... and Mr. Auction Inc. ... for all savings accounts, checking accounts, loans, mortgages and safe deposit boxes for 1979 thru 1981 including but not limited to the following items

1) New account application card

2) Deposit slips

3) Bank statements

4) Cancelled checks

5) Deposited checks

[listing five accounts known to be maintained at bank];

(*5 and 6*) a summons dated February 4, 1983, to Merrill Lynch and Co., and one dated February 8, 1983, to E.F. Hutton, Inc., calling for testimony and the production of

Any and all information relating to all the types of accounts maintained by Bernard Segmond, Edith Segmond ... and Mr. Auction Inc. ... at your institution, to include, but not limited to the following

1) Account application card

2) Monthly statements

3) Checks issued

4) Checks deposited

5) All correspondence;

and (*7*) a summons dated February 9, 1983, to Lewis Braff & Co., calling for testimony and the production of

Any and all information relating to Bernard Segmond's, Edith Segmond's ... and Mr. Auction Inc. [sic] ... income tax preparation, to include but not limited to the following

1) Retained copies of the above mentioned taxpayers individual 1040's and corporate 1120's for FYE 4/30/77 and 4/30/78

2) Retained copies of the above mentioned taxpayers individual State tax return and corporate State tax return

3) All workpapers and records used in the preparation of these tax returns

4) All correspondence between you and the above mentioned taxpayer [sic].

In accordance with section 7609 of the Internal Revenue Code (hereinafter "the Code"), Title 26, United States Code, notice of service of the second through seventh

enumerated summonses and copies thereof were given to Mr. and Mrs. Segmond, as well as the corporate entity. Notice of service of the first enumerated summons was apparently given to the corporate entity, purportedly pursuant to section 7609 of the Code as well.

On February 18, 1983, Segmond filed the within petition to quash all seven summonses. To date, none of the parties summoned has complied with its respective summons. Respondent filed its cross-motion to compel compliance with all seven summonses in response to Segmond's petition.

## DISCUSSION

■ As discussed above, Segmond has petitioned this Court to quash all seven summonses. Five of those summonses were issued to financial institutions that have dealt with the taxpayer, and another of the summonses was issued to what appears to be the taxpayer's accounting firm. Each of those six recipients is a third-party recordkeeper, as defined in 26 U.S.C. § 7609(a)(3). Moreover, each of the six summonses delivered to those recipients requires the production of records of one other than the person summoned. Since Segmond is one of the persons about whom information is sought, he was entitled to, and did receive, notice of those summonses pursuant to section 7609(a). The Court, therefore, has jurisdiction over Segmond's petition to quash those six summonses pursuant to section 7609(b), as amended by the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 324 ("TEFRA").

■ The seventh summons was served upon Segmond himself.[1] Segmond is not a third-party recordkeeper, as defined by section 7609(a)(3)[2]. Moreover, Segmond was not entitled to, and did not receive, notice of that summons (as one other than the

person summoned about whom information was sought). Thus, the Court does not have jurisdiction over Segmond's petition with respect to that summons. *See Godwin v. United States*, 564 F.Supp. 1209, 1211 (D.Del.1983). The petition insofar as it seeks to quash the summons to Segmond is therefore dismissed. Nonetheless, the Court does have jurisdiction over respondent's cross-motion to compel compliance with all seven summonses, pursuant to section 7604. Since the enforceability of all seven summonses is properly before this Court in some manner, the Court will construe Segmond's papers with respect to the summons issued to him as opposition to the respondent's cross-motion and, so construed, will consider the arguments contained therein.

■ The procedures and substantive law applicable to summons enforcement proceedings are the same irrespective of whether the proceeding was commenced by petition to quash or by motion to compel compliance. *See Godwin*, 564 F.Supp. at 1211–12. Thus, all seven summonses currently before the Court will be treated alike.

■ The initial burden in a summons enforcement proceeding rests on the government to establish a *prima facie* case for the enforcement of the summonses. *Id.* at 1211. If the government satisfies this burden, then, and only then, does the burden fall on the taxpayer to show the impropriety of enforcement. *See, e.g., United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1978); *United States v. Powell*, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964); *see also Godwin*, 564 F.Supp. at 1213.

■ The Court finds that respondent has satisfied its burden of establishing a

---

1. Although the summons was actually delivered to Segmond's attorney, it is apparently undisputed that such delivery effected service upon Segmond. *See, e.g.,* Affidavit of Benjamin J. Golub, Esq., dated February 17, 1983, ¶ 17; Affidavit of Richard F. McQuade dated June 9, 1983, ¶ 3.

2. Since Segmond is not a third-party recordkeeper, the Court is at a loss to understand why the IRS treated this summons as a third-party recordkeeper summons by directing notice to the corporation.

*prima facie* case for enforcement. The basic criteria applicable are as follows:

 that the investigation will be conducted pursuant to a legitimate purpose ... [2] [that] the inquiry *may* be relevant to the purpose, [3] that the information sought is not already within the [IRS's] possession, and [4] that the administrative steps required by the Code have been followed.

*Powell*, 379 U.S. at 57–58, 85 S.Ct. at 255 (emphasis added). The respondent has established that these criteria are met through the affidavit of Special Agent Richard McQuade, dated June 7, 1983 ("McQuade Aff.").[3] Specifically, McQuade indicates that he is conducting an investigation into the correctness of Segmond's tax returns for 1979, 1980, and 1981 (McQuade Aff., ¶ 2). McQuade asserts that there is a possibility that Segmond "skimmed" income from Mr. Auction, Inc., and that he did not report all of his personal income (McQuade Aff., ¶ 10). Such an investigation is pursuant to a legitimate purpose.

 Furthermore, McQuade asserts that the items sought "may be relevant and can reasonably be expected to cast light upon the tax liability of" Segmond (McQuade Aff., ¶ 8). An inspection of the summonses at issue shows that all the items sought are personal or corporate financial records. Certainly, these items may be relevant in that they may shed light on the accuracy of Segmond's returns. *See United States v. Arthur Young & Co.*, —— U.S. ——, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984) (accepting "might throw light" standard of relevance); *United States v. Davey*, 543 F.2d 996, 999 (2d Cir.1976).

Furthermore, the information sought is not already in the IRS's possession (McQuade Aff., ¶ 7). Finally, it appears that the proper steps have been followed (McQuade Aff., ¶¶ 3–5). Thus, I find that the respondent has made out its *prima*

*facie* case for enforcement of these summonses.

 The burden therefore devolves upon the taxpayer to show the impropriety of enforcement of these summonses. Segmond's petition to quash asserts several arguments for non-enforcement of the summonses: 1) that all the summonses were issued for an improper purpose—to wit, to pursue a criminal investigation; 2) that all the summonses are overbroad or "fishing expeditions"; 3) that compliance with the summons issued to Segmond violates his Fifth Amendment privilege; and, 4) that the summons issued to Segmond should be modified insofar as it seeks documents not in existence.

The Court finds no merit to Segmond's first contention. Although prior to September 4, 1982, a summons could not issue solely for a "criminal purpose" (*i.e.*, to inquire into possible criminal conduct), section 333(a) of TEFRA, 96 Stat. at 622, abolished that "criminal purpose" defense. Section 7602, as amended by TEFRA, now provides, in relevant part:

(b) *Purpose May Include Inquiry Into Offense.* —The purposes for which the Secretary may take any action described in paragraphs (1), (2), (3) of subsection (a) include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.

The legislative history of the TEFRA amendments makes clear that the permissible inquiry described in subsection (b) includes criminal investigation. It provides as follows:

Under prior law, the use of administrative summonses was limited to determination and collection of taxes. The act expands this authority to include the right to issue a summons for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws, even when

---

**3.** It is the usual procedure for the IRS to establish its *prima facie* case by affidavit. *United States v. Garden State Nat'l Bank*, 607 F.2d 61, 68 (3d Cir.1979); *see also United States v. Kis*, 658 F.2d 526, 536 (7th Cir.1981) ("no more than [an affidavit] is necessary"), *cert. denied sub nom Salkin v. United States*, 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982).

the *criminal investigation* is the sole investigation.

Joint Committee on Taxation, General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1981, 97th Cong., 2d Sess. 236 (emphasis added).

■■■ The only remaining limitation on the IRS's authority to pursue criminal investigations through administrative summonses is found in section 7602(c), namely that no summons may properly be issued if a Justice Department referral has been effected with respect to the taxpayer. No such referral has been made, or indeed is expected with any degree of certainty, in this case (McQuade Aff., ¶ 10).

■■■ The summonses were issued after the effective date of TEFRA, and therefore are proper. Segmond's argument that, since the summonses are directed to tax years pre-dating TEFRA, the Act's provisions are inapplicable, is to no avail.[4] *See Godwin*, 564 F.Supp. at 1213–14 (records for tax years 1978 through 1982 sought; summons enforced). This assuredly is the proper course, since the TEFRA amendments effected a change in the procedures of administrative investigations and summonses, not in the substantive law governing taxpayers' conduct; thus, the amendments are being applied prospectively, and not retroactively in any way.

■■■ The Court finds that Segmond's second contention is equally without merit. Segmond argues that his Fourth Amendment rights will be violated by enforcement of these summonses, because they are "nothing more than a 'fishing expedition' ... [issued] in a blunderbuss fashion." Affidavit of Benjamin J. Golub, dated February 17, 1983, ¶¶ 13–14. Segmond fails, however, to cite a single case denying enforcement to an IRS summons because it is overbroad. Segmond's concern with the "breadth" of the summonses is misguided.

*See United States v. Wyatt*, 637 F.2d 293, 297 (5th Cir.1981) ("the basic question is relevancy"). An unenforceable and overbroad summons is one that is either too indefinite to readily ascertain what is called for, *see Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 208, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946) ("too much indefiniteness ... in the things required to be 'particularly described' "), or so broad as to encompass irrelevant matters, *see United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 369, 94 L.Ed. 401 (1950) ("of such a sweeping nature and so unrelated to the matter under inquiry"). As the Court stated in *Morton Salt*, "it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." 338 U.S. at 652, 70 S.Ct. at 369. The summonses are not vague: they indicate exactly what is called for. Moreover, as discussed above, the items sought are relevant. The summonses are therefore enforceable. *See United States v. Davey*, 543 F.2d 996, 999 (2nd Cir.1976) ("Section 7602 is intended to allow the IRS access to *all* relevant or material records and data") (emphasis supplied); *see also United States v. Giordano*, 419 F.2d 564, 568 (8th Cir.1969) ("Taxpayer in his brief characterized the Government's efforts as a 'fishing expedition.' If so, the Secretary or his delegate has been specifically licensed to fish by § 7602.").

Segmond's remaining contentions relate only to the enforceability of the summons issued to him. The Court finds these arguments to be without merit.

■■■ Segmond argues that compelled compliance with the summons issued to him will violate his Fifth Amendment privilege.[5] Segmond specifically argues that the following items (a) are personal documents subject to invocation of the privilege

---

4. The Court notes that Segmond does not claim that all of TEFRA is inapplicable (*e.g.*, the provisions creating standing and jurisdiction for his initiated petition), only those provisions he does not like.

5. The Court's analysis of this contention was unfortunately unaided by any adversarial input since respondent inexplicably chose to ignore Segmond's Fifth Amendment claims.

and (b) that the act of producing them would be potentially incriminating and is therefore protected:

2) Books and records for Mr. Auction Inc. including but not limited to cash disbursements, general ledgers, cash receipts and general journals, payroll records for FYE 4/30/79 thru 4/30/82

\* \* \* \* \* \*

4) All agreements and contracts entered into between Mr. Auction Inc. and their suppliers, including a list of suppliers for which no contract exists

5) All bills and invoices submitted by Mr. Auction Inc. suppliers.

The Court need not tarry long with Segmond's contention that these records are personal documents. The summons calls for production of corporate records. Segmond, as agent for the corporation, was summoned to deliver corporate records. The records of a corporation, no matter how small the corporation, are not privileged. *See, e.g., Bellis v. United States,* 417 U.S. 85, 100, 94 S.Ct. 2179, 2189, 40 L.Ed.2d 678 (1974) ("no privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be"); *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983, and June 22, 1983,* 722 F.2d 981 (2d Cir. 1983) ("Grand Jury Subpoenas"); *United States v. Fox,* 721 F.2d 32 (2d Cir.1983); *United States v. O'Henry's Film Works, Inc.,* 598 F.2d 313, 316 (2d Cir.1979); *United States v. Shlom,* 420 F.2d 263 (2d Cir. 1969), *cert. denied,* 397 U.S. 1074, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970) (sole stockholder); *Hair Industry, Ltd. v. United States,* 340 F.2d 510, 511 (2d Cir.), *cert. denied,* 381 U.S. 950, 85 S.Ct. 1804, 14 L.Ed.2d 724 (1965). The custodian of corporate records must produce them even if they will incriminate him or were written by him. *Fisher v. United States,* 425 U.S. 391, 413 n. 14, 96 S.Ct. 1569, 1582 n. 14, 48 L.Ed.2d 39 (1976); *Bellis,* 417 U.S. at 100, 94 S.Ct. at 2189; *Wilson v. United States,* 221 U.S. 361, 378, 31 S.Ct. 538, 543, 55 L.Ed. 771 (1911). Thus, Segmond, as custodian, must produce Mr. Auction Inc.'s records.

Segmond argues that this long-standing rule regarding corporate records is inapplicable because the corporation is merely his "alter-ego." There is no alter ego exception to the rule that no Fifth Amendment privilege exists for corporate records. *Shlom, supra; Hair Industry, Ltd., supra.* As the court stated in *Hair Industry, Ltd.,*

any claim to the personal privilege is relinquished as to corporate records by the choice of the corporate form for an individual's business. Corporate records, which would tend to incriminate a corporate officer, can be subpoenaed even where the corporation is a mere alter ego of its owner.

340 F.2d at 511.

Segmond also argues that recent cases emphasizing the separate nature of the entity (*e.g., Bellis,* 417 U.S. 85, 94 S.Ct. at 2181; *United States v. Slutsky,* 352 F.Supp. 1105 (S.D.N.Y.1972)) have diluted the force of the rule as to corporations. That argument overlooks the fact that the courts have continued to maintain the bright line distinction between organizations, like corporations, that have a "recognizable juridical existence apart from their members" and those that do not, like sole proprietorships. *United States v. Fox,* 721 F.2d 32, 35 (2d Cir.1983) (*quoting In re Grand Jury Investigation,* 483 F.2d 961, 962 (3d Cir.1973), *aff'd, Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974)). No Fifth Amendment privilege exists for the former. Thus, Segmond has no personal privilege to claim with respect to the corporate records sought herein.

Segmond also argues that if he is compelled to produce corporate records in his possession, the act of producing them might be incriminating and should be protected. Courts have held that the compelled act of producing documents may be privileged because it tacitly admits the existence, possesison, and/or authenticity of them. *See, e.g., United States v. John Doe,* — U.S. ——, 104 S.Ct. 1237, 79

L.Ed.2d 552 (1984); *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *Grand Jury Subpoenas,* 722 F.2d 981 (2d Cir.1983). Applying the act of production doctrine, however, to corporate records still in the possession of a corporate agent, to avoid incriminating that agent, would vitiate years of law to the contrary. *See Bellis,* 417 U.S. at 88–89, 94 S.Ct. at 2182, 2183; *Wilson v. United States,* 221 U.S. 361, 378, 31 S.Ct. 538, 543, 55 L.Ed. 771 (1911). Therefore, the act of production doctrine should be applied to corporate records in only limited circumstances. *See, e.g., Grand Jury Subpoenas,* 722 F.2d 981 (possession of documents by *former* employee at issue). The Second Circuit there stated that "[i]n producing records as an officer of the company [the agent] would not be attesting to his personal possession of them but to their existence and possession by the corporation, which is not entitled to claim a Fifth Amendment privilege with respect to them." 722 F.2d at 986. This case is identical to the typical scenario depicted in that statement. It is not Segmond's possession of these documents that is potentially incriminating, rather it is the contents of these documents and the corporation's possession of them that is potentially incriminating. That, as discussed above, is not privileged. Segmond's possession of those documents is not even at issue in this case (see Segmond Aff., ¶¶ 8–9).[6] *See United States v. John Doe,* ─── U.S. ───, ─── n. 13, 104 S.Ct. 1237, 1243 n. 13, 79 L.Ed.2d 552 (1984) (possession of sole proprietorship's documents at issue, privilege intact).

■ Moreover, I find that Segmond's production of any documents called for by these summonses will have minimal, if any, testimonial value. Therefore the enforcement of the summons issued to Segmond will not violate his Fifth Amendment privilege.

■ Segmond's final argument that the summons should be modified insofar as it

seeks production of documents not in existence is without merit. If the documents are not in existence, the summons, pursuant to section 7602, does not compel their creation. *See United States v. Davey,* 543 F.2d 996, 1000 (2d Cir.1976). Nonetheless, Segmond must appear and testify that they are not in his custody or in existence. *See McPhaul v. United States,* 364 U.S. 372, 81 S.Ct. 138, 5 L.Ed.2d 136 (1960); *O'Henry's Film Works,* 598 F.2d at 318.

In sum, Segmond's petition to quash the seven IRS summonses is, insofar as it deals with the summons issued to him, DISMISSED for want of subject matter jurisdiction, and DENIED and DISMISSED as to the other six. Respondents' cross-motion for an order compelling compliance with all seven summonses is GRANTED. The summoned parties shall comply fully by appearing before Special Agent Richard McQuade, or some other authorized officer of the IRS, forthwith.

SO ORDERED.

---

6. Since I find that the documents, and the production thereof, are not privileged, I need not examine whether Segmond, by his affidavit describing the existence and maintenance of the documents, waived any claim to such a privilege.