Phil BIELE, John R. Murphy, Neil Peterson, Frank Sarber, and Norman D. Tate, Appellants,

v.

STATE of Alaska, Appellee.

No. 152.

Supreme Court of Alaska.

May 29, 1962.

Robert J. Annis, of Robertson, Monagle, Estaugh & Annis, Juneau, for appellant.

Jack O'Hair Asher, Dist. Atty., Juneau, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

The appellants are commercial fishermen. After a trial by jury in the district magistrate court, they were convicted of a misdemeanor of taking or attempting to take fish in an area closed to fishing, in violation of the Fish and Game Code of Alaska[1] and regulations of the Alaska Board of Fish and Game. On appeal to the superior court, the convictions were affirmed, and a further appeal has been taken to this court.

Appellants urge reversal on two grounds: (1) that their constitutional privilege

1. SLA 1959, ch. 94, art. I, § 28.

against self-incrimination [2] was violated; and (2) that a news broadcast of proceedings had at the trial, heard by three members of the jury, was seriously prejudicial.

### 1. *Self-Incrimination.*

The events which gave rise to the first point on appeal occurred during the direct examination of Robert Lowe, a witness for the state. As an Assistant Attorney General of Alaska he had investigated the reported fishing violation, and in the course of the investigation questioned each of the appellants. He testified that he told them he was investigating a fishing violation that had occurred during the week of July 17, 1960, that they need not make any statements, that any statements they did make could be used against them as evidence in a court of law, that they were not under arrest, and that if they did not want to answer questions they did not have to. He went on to state what the appellants had told him regarding their presence on the fishing boat SURF during the period July 19, 20 and 21, 1960,[3] and then near the close of the direct examination testified as follows:

"Q. Now, did you make it absolutely clear to these defendants what violations that you were checking?

"A. I told them that we were checking a fishing violation that occurred during the week—the fishing week, of beginning the 18th. Of course, at that particular time we were investigating, I didn't have all the details.

"Q. Did you—did they understand that they were under suspicion of being interrogated as to this particular violation?

"A. I'm sure there was no misunderstanding there, because of some of the statements that they didn't wish to make.

"Q. Did any of them—

"MR. ANNIS: I beg your pardon?

"A. (By Mr. Lowe) I said that I am sure that there was no misunderstanding because of some of the statements that—or questions that I asked, that they did not wish to answer."

At this point appellants' counsel asked to have the jury excused, and then moved for a mistrial on the ground that the appellants' privilege against self-incrimination had been violated. The motion was denied, and the magistrate instructed the jury to disregard the testimony.

The substance of what transpired at this point in the trial, as appellants state in their briefs, is this: the jury learned that appellants had not wished to answer "some" questions, and because of this, that the witness had reached the conclusion appellants knew he was investigating a particular fishing violation. It is argued that this testimony caused the jury to draw an inference of guilt by reason of the appellants' refusal to answer questions involving the violation with which they were later charged. Appellants contend this violated the intent of the constitutional provision that no person shall be compelled in a criminal proceeding to be a witness against himself.[4]

In support of this argument reliance is placed on a 1955 decision of the United States Court of Appeals for the Fifth Circuit. In Helton v. United States,[5] a defendant had been charged with crimes relating to the illegal acquisition and production of marijuana. Evidence was produced showing that in a police search of the defendant's home marijuana had been found in a tobacco can in the pocket of a raincoat in a closet, and also under the dashboard in his automobile. In addition,

---

2. This "privilege" referred to is that conferred by the Alaska Constitution, art. I, § 9, which provides in part that "No person shall be compelled in any criminal proceeding to be a witness against himself."

3. Two other witnesses for the state had previously testified they observed the vessel SURF and her crew of five engage in illegal fishing during the evening of July 19.

4. Alaska Const. art. I, § 9, supra note 2.

5. 221 F.2d 338 (5th Cir. 1955).

some was found growing in the back yard of his home.

The defendant did not take the stand. Over objections of counsel, a police officer was allowed to testify that defendant had made no explanation as to how the can of marijuana got in the raincoat in the closet, that he had offered no explanation to how the marijuana stalks got in the back yard, and that he had not explained how the marijuana got in the automobile. The court of appeals held that such testimony was an attempt to convict the defendant by his silence, by having the jury draw an inference of guilt from his refusal to explain, in violation of the spirit, if not the letter, of the Fifth Amendment.[6]

This decision is clearly distinguishable from the case at hand. In Helton the trial court had permitted, over continuous objections repeated statements by a police officer that the accused had failed to explain incriminating facts. In this case there is only one unresponsive statement from the witness Lowe to the effect that appellants had not wished to answer "some" questions. What the questions were—whether they related to incriminating facts—was not disclosed. In Helton the trial judge did not instruct the jury to disregard the testimony. In this case such instruction was given. Finally, in the Helton case there was an incident of other testimony, considerably more prejudicial than that relating to the defendant's failure to explain. A witness had testified that when he questioned the defendant regarding marijuana in and around his home, the defendant had told him that "he had been smoking marihuana intermittently very seldom for the past four or five years." The appellate court found that this evidence was so highly prejudicial—was calculated to leave such an impression on the jury—that a mistrial ought

to have been ordered. In this case we find nothing even remotely resembling an error of such magnitude.

■ The circumstances here simply do not warrant a finding that Lowe's brief, innocuous and rather vague testimony could have appreciably influenced the jury to convict appellants by reason of their silence. But even assuming that what the witness said ought not to have been said in front of the jury, the guilt of appellants is so plain that a far more serious blunder in the conduct of the trial would be necessary to require a reversal.[7] It was established through appellants' own admissions that they were on board the vessel SURF as commercial fishermen on the day the violation took place. It was clearly proved through the testimony of two eyewitnesses for the state that the identical vessel with a crew of five had put out a seine net in an attempt to take fish, which were present in large number, in an area closed to commercial fishing. These witnesses were not impeached, their testimony was not contradicted, and the appellants did not put on a defense. In the light of this record it is scarcely conceivable that the jury could have reached a verdict other than that of guilty. The alleged prejudicial testimony was of little or no consequence.

2. *The News Broadcast.*

An evening news broadcast of proceedings at the first day of trial was made by radio and television. The following morning appellants' counsel moved for mistrial on the ground that the news report, although factually correct, contained a conclusion of the reporter which would have been prejudicial if heard by the jury. The motion was denied. Counsel requested the magistrate to examine the jurors to determine whether or not they heard the broad-

6. The Fifth Amendment to the federal constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." This is virtually identical with the language of the prohibition found in the Alaska Constitution, art. I, § 9, which provides

that "No person shall be compelled in any criminal proceeding to be a witness against himself."

7. Nash v. United States, 54 F.2d 1006 (2d Cir.), cert. denied, 285 U.S. 556, 52 S.Ct. 457, 76 L.Ed. 945 (1932).

cast, but he made it clear he did not want them examined as to any effect the report may have had on them. Following counsel's suggestion, the magistrate asked the jury if any had heard the broadcast, and three indicated they had. He then instructed those jurors to disregard the broadcast, and reminded them they were to make a determination on the case solely on the evidence presented in court and the instructions. This instruction had been approved by appellants' counsel.

As we stated in Oxenberg v. State,[8] the fundamental question to be determined in an instance of this type is whether the news report was prejudicial—whether it is likely that the jury's verdict was affected by reason of what the reporter had said. Such likelihood does not appear. We have examined the entire transcript of the testimony referred to in the broadcast, and find that it was an accurate report of what transpired in court, as appellants concede.

Appellants, however, argue that the report was prejudicial because it contained in part a "comment on the testimony of the state's witnesses." To a limited extent such comment was made by the reporter. But it was fair comment, and we see nothing in it that reasonably could have influenced the jury to find appellants guilty.

It is also argued that the report had a prejudicial effect because it included "only excerpts of the most damaging parts of the state's evidence, without including other features of the cross-examination." The result of this argument is that no person charged with a criminal offense could ever receive a fair trial unless (1) the public was kept completely uninformed of what took place in court, or (2) unless the publicity given to what occurred at the trial always included a report of facts which favored the defense. The concept of a fair trial does not require us to go that far.

The appellants have failed to show any prejudice resulting to them from the news broadcast. We hold that the magistrate did not abuse his discretion in denying the motion for mistrial.[9]

The judgment is affirmed. The stay of judgment as to appellant, Norman D. Tate, ordered by this court on June 30, 1961, is vacated.

8. Opinion No. 36, 362 P.2d 893, 899–900 (Alaska), cert. denied, 368 U.S. 56, 82 S.Ct. 189, 7 L.Ed.2d 128 (1961).

9. Marrone v. State, No. 27, 359 P.2d 969, 976–978 (Alaska 1961).