Mary Fortuna HANSEN, as Personal Representative of the Estate of James B. Hansen, and Mary Fortuna Hansen, Individually, Appellants,

v.

William B. STROECKER, Appellee.

William B. STROECKER, Cross-Appellant,

v.

Mary Fortuna HANSEN, as Personal Representative of the Estate of James B. Hansen, and Mary Fortuna Hansen, Individually, Cross-Appellees.

Nos. S–214, S–242.

Supreme Court of Alaska.

May 10, 1985.

Gary W. Vancil, Fairbanks, for appellants and cross appellees.

Joseph L. Paskvan, Rice, Hoppner, Brown & Brunner, Fairbanks, for appellee and cross-appellant.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

On December 31, 1971, James B. Hansen and W.G. Stroecker signed an agreement

entitled "Option to Purchase."[1] Under the terms of the agreement, Stroecker paid $1,500.00 to Hansen in exchange for an option to purchase some seven parcels. Two river fronting parcels were priced at $500.00 each, two other lots were priced at $250.00 each, one parcel was priced at $0.0333 per square foot, another parcel was priced at $0.1667 per square foot, and the seventh parcel was to be conveyed without additional consideration. The total purchase price could only be calculated after the area of the parcels being conveyed at square footage rates was calculated, and this could not be done until a survey was completed.

The agreement does not state when the option was to be exercised. Further, it does not state who was to have the property surveyed so that the parcels' price per square foot could be calculated.

There is a disputed factual issue as to who was to complete the survey. Mary Hansen and her daughter Irene Mead claim that it was Stroecker's duty. Stroecker testified that he thought that Hansen would take care of the survey.

Hansen died on June 20, 1976. Stroecker had the property surveyed in July of 1980 and on August 25, 1980, he sent a check for the balance of the purchase price, $1,028.00, to the attorney for Mrs. Hansen. Mrs. Hansen refused to deliver to Stroecker a deed to the property. Stroecker brought this action for specific performance of the agreement.

Stroecker moved for summary judgment. Mrs. Hansen opposed on the grounds that the agreement was void because it violated the rule against perpetuities and that the agreement could not be enforced because Stroecker had unreasonably delayed his exercise of the option. The superior court granted Stroecker's motion and ordered Mrs. Hansen to deliver to Stroecker a deed for the property. Stroecker moved, as the prevailing party, for an award of attorney's fees. The court, without explanation, denied this motion. Both parties appealed. Hansen seeks to have this court reverse the decision on the merits, while Stroecker urges a remand on the issue of attorney's fees.

The trial court concluded that the agreement was not an option but a real estate contract which conveyed a vested interest to Stroecker when the contract was signed. The court therefore found there to be no violation of the rule against perpetuities. In our view, the court's conclusion that the contract was a real estate contract rather than an option depends upon the resolution

1. The agreement provides in relevant part:

James B. Hansen, the undersigned, for and in consideration of the sum of $1,500.00 in hand paid by W.G. Stroecker, the receipt of which is hereby acknowledged, does by these presents grant to said W.G. Stroecker an option to purchase the following described tract of land situated in Section 5, Township 9 South Range 10 East Fairbanks Meredian [sic] in the Fairbanks Recording District, Fourth Judicial District, State of Alaska.

The total purchase price to be determined after the calculation of engineering data determining the total area in square feet. The total purchase price to be calculated on the following basis:

$500.00 for each of two 150' × 100' foot lots fronting 100' directly on the slough, surplusage if any in frontage on the river to be calculated and added to purchase price at the rate of $.0333 per square foot. The tier of lots next adjoining the river frontage lots also measuring 150' × 100' their price to be $250.00 for each lot. Any additional land lying westerly of these four lots and bounded

by the East boundary of the Old Richardson Highway to be purchased at the rate of $0.1667 per square foot.

It is to be understood, however, that any land lying southerly of the south boundary line of the lots hereinabove specified, (said South boundary lines running parallel with the E–W quarter section line) and being bounded to the southwest by the Old Richardson Highway and on easterly side bounded by the first course of the tract of land herein optioned, the same being triangular in shape is to be conveyed to the optionee without payment of a purchase price, and is a gift.

A rough sketch map is attached hereto to aid in clarrification [sic] of the intent of the parties.

Terms of the purchaser [sic]: cash upon delivery of a warranty deed containing an acceptable legal description; the $1,500.00 delivered herewith to be applied on the purchase price.

This option shall be binding upon the heirs devisees and assigns of the parties herein.

of conflicting extrinsic evidence which can be accomplished only at trial. However, it is unnecessary to remand for a trial because, assuming that the contract is an option, it does not violate the variant of the rule against perpetuities which we conclude was effective in this case.

The rule against perpetuities, in its general common law form, is this: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." Gray, *Rule Against Perpetuities* § 201 (4th Ed.1942). The interest in question must be examined as of the time of its creation; it must be certain to vest within the period of perpetuities. Leach, *Perpetuities in a Nutshell*, 51 Harv.L.Rev. 638, 642 (1938). Thus, if anything might happen, no matter how unlikely, which would cause the interest to vest later than twenty-one years after the death of all lives in being at the creation of the interest, the interest is void. *Id.* at 643.

■ Under this traditional approach, it is clear that options "in gross"[2] to purchase real estate violate the rule against perpetuities when the time for their exercise is not limited to the period of perpetuities. *See* Restatement of Property § 393 (1944); 5 *Powell on Real Property* ¶ 771[2], at 73 (1980); Annot., 66 A.L.R.3d 1294, 1296 (1975). In this case the agreement, viewed most favorably to Mrs. Hansen, creates an option in gross which was not by its terms required to be exercised within the period of perpetuities. It therefore would be void under the traditional conception of the rule against perpetuities.

Stroecker urges us, however, to apply AS 34.27.010. This provision, enacted in 1983, provides:

In determining if an interest would violate the rule against perpetuities, the period of perpetuities shall be measured by actual rather than possible events. However, the period of perpetuities may not be measured by a life whose continuance does not have a causal relationship to the vesting or failure of the interest. An interest that would violate the rule against perpetuities as modified by this section shall be reformed, within the limits of that rule, to approximate most closely the intention of the creator of the interest.

The first two sentences of this statute adopt an approach to the rule commonly referred to as "wait-and-see." The last sentence gives the court the power to reform interests, which is known as "cy pres." The wait-and-see approach requires the court to judge an interest's validity by what actually happens, rather than what might happen. Thus, if AS 34.27.010 applies to this case, the option will not violate the rule, since it was actually exercised in 1980, well within the period of perpetuities.

■ However, AS 34.27.010 does not apply here because of AS 01.10.090,[3] which prohibits retrospective application of a statute unless clearly provided for by the statute. In *Norton v. Alcoholic Beverage Control Board,* we stated " 'a retroactive (retrospective) statute is one which gives to pre-enactment conduct a different legal effect from that which it would have had without the passage of the statute.' " 695 P.2d at 1090, 1093 (Alaska 1985) (*quoting* Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv.L.Rev. 692, 692 (1960)). Before enactment of AS 34.27.010, the general common law rule would have voided the agreement in this case. Under AS 34.27.010 the outcome would be precisely the opposite. Thus, since AS 34.27.010 does not clearly provide for its retrospective ap-

---

**2.** An option "in gross" is one which is not connected with a present interest in the questioned property. 5 *Powell on Real Property* ¶ 771[2] (1980). Options in gross should be distinguished from other types of options which are connected to an estate in land. An example would be an option to purchase real property at the end of a leasehold estate. Such options are generally held not to violate the rule against perpetuities. *See* Restatement of Property § 395 (1944).

**3.** AS 01.10.090 states: "No statute is retrospective unless expressly declared therein."

plication, AS 01.10.090 prohibits its application to this case.

Even though the statutory wait-and-see approach does not apply to this case, this does not mean that the general common law approach must. We have never had occasion to adopt the general rule against perpetuities[4] and are not precluded from adopting the wait-and-see approach.

Several courts from other states have adopted or used wait-and-see in at least a limited sense. *Merchant's Nat. Bank v. Curtis*, 98 N.H. 225, 97 A.2d 207, 212 (1953); *Warner v. Whitman*, 353 Mass. 468, 233 N.E.2d 14, 16–17 (1968); *Phelps v. Shropshire*, 254 Miss. 777, 183 So.2d 158, 161–62 (1966); *Grynberg v. Amerada Hess Corp.*, 342 F.Supp. 1314, 1321–22 (D.Colo. 1972) (applying Mississippi law); *Story v. First National Bank & Trust Co.*, 115 Fla. 436, 156 So. 101, 104–06 (1934). Other courts have adopted a *cy pres* approach, exhibiting willingness to reform instruments to comply with the rule. *See In re estate of Chun Quan Yee Hop*, 52 Hawaii 40, 469 P.2d 183 (1970) (adoption of *cy pres*); *In re Foster's Estate*, 190 Kan. 498, 376 P.2d 784 (1962) (excision of part of will which would invalidate gift); *Carter v. Berry*, 243 Miss. 321, 140 So.2d 843 (Miss. 1962) (limited *cy pres* —reduction of the age contingency).

In *Curtis*, the New Hampshire Supreme Court could see no harm in the wait-and-see approach:

There is no logical justification for deciding the problem as of the date of the death of the testator on facts that might have happened rather than facts which actually happened. It is difficult to see how the public welfare is threatened by a vesting that might have been postponed

beyond the period of perpetuities but actually was not.

97 A.2d at 212. The Massachusetts Supreme Court in *Warner*, a case similar to this one, applied Massachusetts's limited wait-and-see statute[5] retroactively, even though the statute applied prospectively only. The court explained:

Although the statute operates prospectively, the Legislature has clearly expressed the policy of the Commonwealth and we feel that this court is justified in applying that policy to the provisions under consideration.

The policy behind the rule against perpetuities is not violated if the trust instrument is given the construction we have placed on it. Property was not in fact tied up beyond the period of the rule.

233 N.E.2d at 17.

The authors of the Restatement (Second) of Property endorse the wait-and-see approach even though they acknowledge that it is "the present minority view." Restatement (Second) of Property § 1.4 (1981). The primary reason they favor wait-and-see is that the traditional approach voids reasonable limitations that would, in fact, vest within the period of perpetuities. *See id.* at 66–67, reporter's note. Further, bad limitations easily can be made "good" by a skilled draftsman who includes a savings clause providing that all limitations in the instrument must vest within twenty-one years after the death of the lives in being at the creation of the instrument. Thus, all the general rule does is to put a premium on skilled draftsmanship, while unfairly trapping and punishing the uninitiated.

The adoption of the wait-and-see approach in this Restatement is largely motivated by the equality of treatment that

---

**4.** In *Tsakres v. Owens*, 561 P.2d 1218, 1223 n. 10 (Alaska 1977), we did cite the traditional rule as stated by Gray, *supra.* However, in *Owens* we never reached the perpetuities question. *Id.* at 1223.

**5.** Mass.Gen.Laws Ann. ch. 184A, § 1 (West 1977) provides:

In applying the rule against perpetuities to an interest in real or personal property limited to take effect at or after the termination of one or more life estates in, or lives of, persons in being when the period of said rule commences to run, the validity of the interest shall be determined on the basis of facts existing at the termination of such one or more life estates or lives.

is produced by placing the validity of all non-vested interests on the same plane, whether the interest is created by a skilled draftsman or one not so skilled. *Id.*, introductory note at 13.

▮ We are persuaded by these authorities that the wait-and-see approach should be adopted as the common law rule against perpetuities in Alaska. Therefore, the agreement in this case is not void, because Stroecker exercised his option well within the period of perpetuities. The superior court's conclusion that the agreement was not void is therefore sustained.

▮ The other points raised by Mrs. Hansen on appeal are that the trial court erred in failing to find laches as a bar to specific enforcement; the trial court erred by failing to find that specific performance is barred by the statute of limitations; and that the trial court erred in failing to require clear and convincing evidence that specific performance was warranted. With respect to the laches argument, the trial court found that there was no unreasonable delay, noting that Mr. Hansen had made an arrangement with a surveyor on which Stroecker was entitled to rely, that the parties were old and close friends, that neither party indicated that there was any rush to have the land surveyed, and that significant prejudice was not present. These reasons amply justified the court's discretionary refusal to apply laches. *See Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough,* 527 P.2d 447, 457 (Alaska 1974). Mrs. Hansen's arguments concerning the statute of limitations and the requirement of clear and convincing evidence are without merit.

▮ With respect to the cross-appeal, while a trial court may deny a prevailing party reasonable attorney's fees (*Cooper v. Carlson,* 511 P.2d 1305, 1311 (Alaska 1973); *see Larry v. Dupree,* 580 P.2d 326, 327 (Alaska 1978)), an explanation in all such cases is required. *Conway, Inc. v. Ross,* 627 P.2d 1029, 1032 (Alaska 1981); *Curran v. Hastreiter,* 579 P.2d 524, 530–31 (Alaska 1978). Since no explanation was given, a remand is necessary.

The award of specific performance is AFFIRMED. The case is REMANDED to the superior court for an explanation of its refusal to award attorney's fees. Jurisdiction of this appeal is retained pending the explanation.