**Elmer PRATT,
Appellant/Cross-Appellee,**

v.

**Willis F. KIRKPATRICK, Director, Division of Banking, Securities & Corporations, Department of Commerce and Economic Development, State of Alaska, Appellee/Cross-Appellant.**

Nos. S–658, S–710.

Supreme Court of Alaska.

May 9, 1986.

Michael Jungreis, Anchorage, for appellant/cross-appellee.

Jeffrey W. Bush, Asst. Atty. Gen., Norman C. Gorsuch, Atty. Gen., Juneau, for appellee/cross-appellant.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS and MOORE, JJ.

OPINION

MATTHEWS, Justice.

This is an appeal from a final order of the superior court enforcing an administrative subpoena duces tecum issued by appellee, Willis F. Kirkpatrick, Director of the Division of Banking, Securities and Corporations of the Alaska Department of Commerce and Economic Development. Appellant, Elmer Pratt, maintains that he is privileged from complying with the subpoena by virtue of the protections against self-incrimination provided in the fifth amendment of the United States Constitution and article I, section 9 of the Alaska Constitution, as well as the right to privacy guarantee in article I, section 22 of the Alaska Constitution. Pratt also contends that simply by claiming the privilege he would be immune from prosecution in connection with matters relating to the subpoenaed documents, if he were forced to produce them. Finally, as cross-appellant, Kirkpatrick challenges the superior court's denial, without explanation, of the state's motion for an award of attorney's fees.

## I. FACTS AND PROCEEDINGS BELOW

■ In 1981 the Division of Banking, Securities and Corporations (State) received information that Pratt was violating the Alaska Securities Act, AS 45.55, by selling unregistered securities in the form of tax shelter investment programs. The state issued a cease and desist order, ordering Pratt to stop selling the securities. In December 1983, the state issued a second cease and desist order against Pratt, including new violations and additional parties. The order alleges that Pratt sold unregistered securities in violation of AS 45.55.070 and sold securities and acted as a security advisor without being registered to do so, in violation of AS 45.55.030. Pratt requested a hearing as permitted by AS 45.55.200(b). Pursuant to AS 45.55.190(b),[1] Kirkpatrick executed a subpoena duces tecum, requir-

---

1. AS 45.55.190(b) provides in part:
 For the purpose of an investigation or proceeding under this chapter, the administrator ... may ... require the production of books, papers, correspondence, memoranda, agreements, or other documents or records which the administrator considers relevant or material to the inquiry.

ing Pratt to produce all financial statements, journals, charts of accounts, bank accounts and statements, letters, brochures, and any other documents relating to the alleged illegal securities practices.[2] Pratt responded by objecting to each request in the subpoena on the grounds of the "First, Fourth, Fifth, Ninth and Tenth Amendments to the U.S. Constitution."

As authorized by AS 45.55.190(c), the state filed a petition for an order compelling Pratt to comply with the subpoena and an ex parte motion to compel Pratt's compliance. The superior court issued an order to show cause and held a hearing on June 18, 1984. At the hearing, the court ordered Pratt to submit the documents for an *in camera* inspection.

Pratt submitted several items, along with an explanation of his privilege claim. Included in the items submitted were two checkbooks, one with checks imprinted "Transcoastal Equipment Leasing Ltd." ("Transcoastal") and one with checks imprinted "Gold Exploration, Ltd." ("Gold"). The following documents relating to Transcoastal were also submitted: (1) Subscription Agreement and Investment Representation, (2) Preliminary Offeree Questionnaire, and (3) Instructions to Subscribers. Pratt also submitted two documents relating to Gold: (1) Acknowledgment of Receipt of Private Placement Memorandum, and (2) Subscription Agreement and Investment Representation.

Because the items submitted were only a small portion of those subpoenaed, the court issued a second order on August 9, 1984 for Pratt to produce any additional items. The order stated that the court would consider Pratt's claim of privilege withdrawn for any item subpoenaed, but not produced by August 24, 1984. Pratt then submitted one additional item—a photocopy of the complete check register of

the Utah bank checking account relating to Transcoastal. None of the remaining documents were submitted.

On September 6, 1984, the court granted the state's motion to compel further response to its subpoena duces tecum. The court concluded, "that the items produced (or not produced and therefore claimed withdrawn as per the court's order of August 9, 1984) are not protected by the fifth amendment self-incrimination privilege." Pratt filed this appeal. Also without explanation, the lower court denied the state's motion for attorney's fees. The state filed a cross-appeal on this issue.

## II. PRIVILEGE UNDER THE UNITED STATES CONSTITUTION

### A. *Items Never Submitted for In Camera Inspection*

■ The claimant of the privilege against self-incrimination bears the burden to "assert the privilege as to particular documents, and to provide the court with some basis for the claim that providing the documents would tend to incriminate him." *State, Department of Revenue v. Oliver*, 636 P.2d 1156, 1163 n. 10 (Alaska 1981) *citing United States v. Ponder*, 475 F.2d 37, 39 (5th Cir.1973). As the United States Supreme Court stated in *Hoffman v. United States:* "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified...." 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118, 1124 (1951) (citation omitted); *see also* Annot. 95 L.Ed. 1126, 1128 (1951) (one seeking protection under the fifth amendment must, when called upon, produce the documents for inspection by the court so that the court can

---

**2.** Pratt claims that the purpose of the subpoena was to prepare for the hearing. At some point, Pratt dropped his request for a hearing; thus, he contends that the original pretext for the issuance of the subpoena is gone. The state maintains that the broader purpose of the subpoena was to "further the investigation into the

[alleged] ongoing securities violations." Because AS 45.55.190(b) gives the administrator the power to require production of documents and records for purposes of an investigation, we agree with the state that "[t]he existence or nonexistence of the hearing is irrelevant." *[Id.]*

make a determination of their tendency to incriminate).

Pratt never submitted many of the subpoenaed items for inspection. By declining to produce the documents, Pratt's claim of privilege as to them was deemed withdrawn, per the court's order of August 9, 1984. Pratt, therefore, failed to meet his burden of providing the court with some basis for his claim of privilege. Thus, the court correctly concluded that the unsubmitted documents are not protected by the fifth amendment self-incrimination privilege.[3]

### B. *Items Submitted For In Camera Inspection*

#### 1. *The Contents of the Documents*

■ Pratt claims that the contents of the documents submitted would tend to incriminate him. Incrimination, however, is not the only element that must be met to invoke a valid fifth amendment privilege.[4] The documents must also constitute "compelled testimonial communications." *Fisher v. United States*, 425 U.S. 391, 409, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39, 55 (1976). In *Fisher*, the United States Supreme Court held that the contents of business records are ordinarily not privileged because they are created voluntarily and *without* compulsion.

■ Recently, the Court reiterated this view in a case concerning a sole proprietorship's business records and documents. In *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), the Court held that because the business records were created voluntarily in the normal course of business, there was no compulsion in their preparation and thus, the contents were not privileged. 465 U.S. at 612 n. 10, 104 S.Ct. at 1242 n. 10, 79 L.Ed.2d at 560 n. 10. Pratt was under no compulsion

to create the documents at issue here (checking account records and investment information papers). Consequently, their contents are not privileged.

#### 2. *The Act of Production*

Even though the contents of documents are not privileged, under certain facts and circumstances the very act of producing them may be. *Doe*, 465 U.S. at 612, 104 S.Ct. at 1242, 79 L.Ed.2d at 560; *Fisher*, 425 U.S. at 410, 96 S.Ct. at 1581, 48 L.Ed.2d at 56. In discussing whether the Internal Revenue Service could have summoned from the taxpayer certain documents his accountant prepared, the *Fisher* Court stated: "Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It would also indicate the taxpayer's belief that the papers were those described in the subpoena." 425 U.S. at 410, 96 S.Ct. at 1581, 48 L.Ed.2d at 56 (citations omitted). However, in *Fisher*, the court determined that the taxpayer's act of producing the accountant's work papers would not involve testimonial self-incrimination. 425 U.S. at 411, 96 S.Ct. at 1581, 48 L.Ed.2d at 56. The Court stated that the existence and location of the papers were "foregone conclusion[s]," and that " '[t]he question is not of testimony, but of surrender.' " *Id. quoting In re Harris*, 221 U.S. 274, 279, 31 S.Ct. 557, 558, 55 L.Ed. 732, 735 (1911). Moreover, the taxpayer would not be competent to authenticate the accountant's work papers, and thus, the act of production would not involve incriminating testimony by implicit authentication. 425 U.S. at 412–13, 96 S.Ct. at 1581–82, 48 L.Ed.2d at 57. While *Fisher* involved an individual taxpayer and his accountant's papers, the Court analogized to the situation of a custodian in

---

**3.** Pratt stated that his accountant had some of the subpoenaed documents and he would submit them to the court when he received them from her. Nothing in the record shows that he ever produced or attempted to produce these documents.

**4.** To successfully claim the fifth amendment privilege in response to a subpoena duces tecum, three elements must be present—(1) compulsion, (2) testimonial communication, and (3) incrimination by such communication. *United States v. Authement*, 607 F.2d 1129, 1131 (5th Cir.1979) (per curiam).

possession of documents belonging to a collective entity. The Court cited numerous prior cases where subpoenas against such custodians were enforced even though the act of producing the documents would admit their existence, possession and authenticity. 425 U.S. at 411-13, 96 S.Ct. at 1581-82, 48 L.Ed.2d at 56-58.

In *Doe* the United States Supreme Court found the privilege against self-incrimination applicable to the act of producing the business records of a sole proprietorship. While the contents of the documents were not protected, the act of production involved testimonial self-incrimination. Unlike *Fisher*, in *Doe*, the government failed to show that the existence, possession and authentication of the documents were "foregone conclusion[s]." 465 U.S. at 614 n. 13, 104 S.Ct. at 1243 n. 13, 79 L.Ed.2d at 561 n. 13.

Pratt argues that because *Doe* removed the distinction between business records of a sole proprietorship and a collective entity on the issue of contents privilege, it removed the distinction as to the act of production as well. According to Pratt, a custodian of documents belonging to a collective entity would be privileged from the act of producing the documents he held in a representative capacity unless the government could show that the documents' exist-

ence, location and authenticity were "foregone conclusion[s]."

Pratt misinterprets *Doe*. *Doe* involved a sole proprietorship and did not change the established precedent regarding collective entities. As custodian for the limited partnership, Pratt held the documents in a representative rather than personal capacity. Thus, the privilege is inapplicable, even though by the very act of production he would admit their existence, location and authenticity. *See Fisher*, 425 U.S. at 411-13, 96 S.Ct. at 1581-82, 48 L.Ed.2d at 56-58.

A United States District Court recently addressed the issue of whether a witness, holding partnership papers in his representative capacity, could refuse to surrender the partnership records on the basis of the "act of production" doctrine enunciated in *Fisher* and *Doe*. In *In re Grand Jury Subpoenas Served February 27, 1984*, 599 F.Supp. 1006, 1013 (E.D.Wash.1984), the court, lead by the "weight of authority," concluded that the partner could not assert the "act of production" doctrine in regard to any partnership records in his possession.[5] We agree with this conclusion. The "act of production" doctrine may apply to a sole proprietorship or it may apply to the *personal* possession of collective entity documents, but the law still remains that

---

5. *See also United States v. Malis*, 737 F.2d 1511, 1512-13 (9th Cir.1984) (if witness holds records of collective entity in representative capacity, no privilege to avoid production, but if entity is sole proprietorship then privilege depends on whether act of production amounts to testimonial self-incrimination); *In re Grand Jury Proceedings (Vargas)*, 727 F.2d 941, 944-45 (10th Cir.1984), *cert. denied sub nom. Vargas v. United States*, —— U.S. ——, 105 S.Ct. 90, 83 L.Ed.2d 37 (1984) ("act of production" doctrine inapplicable to attorney holding files in representative capacity for client); *In re Grand Jury (Butcher)*, 722 F.2d 294 (6th Cir.1983), *cert. dismissed sub nom. Butcher v. United States*, 465 U.S. 1085, 104 S.Ct. 1458, 79 L.Ed.2d 774 (1984) (no "act of production" protection exists when individual held corporate records in a representative capacity); *United States v. G & G Advertising Co.*, 592 F.Supp. 1278, 1279 (E.D.Mo.1984), *aff'd*, 762 F.2d 632 (8th Cir.1985) (asserting privilege misplaced where former president of defunct corporation summoned to produce records in his representation capacity); *Segmond v. United*

*States*, 589 F.Supp. 568, 576 (S.D.N.Y.1984) (application of " 'act of production' doctrine ... to corporate records still in possession of corporate agent ... would vitiate years of law to the contrary" and should be applied only in limited circumstances). *But see In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983*, 722 F.2d 981, 987 (2d Cir.1983) (former corporate president, who absconded with corporate documents gained *personal* possession of the documents, entitling him to invoke "act of production" doctrine, however, court admitted that if witness were still an officer of the corporation he would be obligated as a representative of the company to produce its documents); *In re Katz*, 623 F.2d 122, 126 (2d Cir.1980) (the "very production under compulsion [of corporate records held by an attorney] may be testimonial and incriminating communication"); *In re Grand Jury Investigation, Special Grand Jury No. 11, September Term, 1983*, 600 F.Supp. 436, 438 (D.Md.1984) (discussion in dicta of applicability of "act of production" doctrine to corporate papers).

"an individual cannot rely upon the privilege [fifth amendment] to avoid producing the records of a collective entity which are in his possession in a *representative* capacity, *even if these records might incriminate him personally.*" *Bellis v. United States*, 417 U.S. 85, 88, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678, 683 (1974) (emphasis added) (law partnership records not privileged); *see also United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1910). *See generally* Annot. 17 A.L.R. 4th 1039, 1058–60 (1982). To rule otherwise would ignore the need for states to have access to information regarding transactions which are the appropriate subject of governmental regulation. *See White*, 322 U.S. at 700, 64 S.Ct. at 1252, 88 L.Ed. at 1547; *Wilson*, 221 U.S. at 380, 31 S.Ct. at 544, 55 L.Ed. at 779.

■ We must now examine whether the entities involved here are collective entities and whether Pratt held the documents in a representative capacity. Both Gold and Transcoastal purport to be limited partnerships. They are collective entities because each one is "an organization which is recognized as an independent entity apart from its individual members." *Bellis*, 417 U.S. at 92, 94 S.Ct. at 2185, 40 L.Ed.2d at 686. Contrary to Pratt's assertions, he holds the documents in question in a representative, rather than an individual capacity.[6] He possesses the checkbooks, investment representations, subscription agreements and other related documents as part of his duties as general partner of Gold and Transcoastal.

■ We hold the "act of production" doctrine is inapplicable in this circumstance and find no privilege exists under the United States Constitution.

### III. PROTECTION UNDER THE ALASKA CONSTITUTION

Pratt argues that he is protected from production of the subpoenaed documents by the privilege against self-incrimination and the right to privacy provisions of the Alaska Constitution. Alaska Const. art. I, § 9, § 22.[7]

#### A. *Privilege Against Self-Incrimination*

■ We have not previously been confronted with the issue of compelled production of partnership records from one who holds them in a representative capacity. The language of article I, section 9 of the Alaska Constitution is virtually identical to that of the fifth amendment to the United States Constitution. *Biele v. State*, 371 P.2d 811, 813 n. 6 (Alaska 1962). In at least one instance, however, we have interpreted the Alaska provision more broadly than the United States Supreme Court construed the fifth amendment. *See Scott v. State*, 519 P.2d 774, 785 (Alaska 1974) (the privilege against self-incrimination under the Alaska Constitution prohibits extensive pretrial prosecutorial discovery in criminal proceedings). While we are not limited by the federal courts in interpreting our own constitution, in this instance we are not persuaded by Pratt's arguments to interpret the Alaska self-incrimination provision more broadly than the federal courts have construed the fifth amendment.

---

**6.** One United States District Court provides the following guidelines:

A person has possession in a representative capacity if he (1) has possession of corporate papers for safekeeping at the request of the corporation or (2) has or obtained possession of said papers as a part of the duties of the possessor as an agent, employee, representative or director of the corporation or as an aid in performing the duties and responsibilities as such to the corporation or (3) has possession of corporate papers by virtue of having removed them in an unauthorized fashion from corporate premises, records, files or depositories.

*In re Grand Jury Investigation, Special Grand Jury No. II, September Term, 1983*, 600 F.Supp. 436, 438 (D.Md.1984).

**7.** Alaska Const. art. I, § 9 provides in part: "No person shall be compelled in any criminal proceeding to be a witness against himself."

Alaska Const. art. I, § 22 provides in part: "The right of the people to privacy is recognized and shall not be infringed."

## B. *The Right to Privacy*

The right to privacy embodied in the Alaska Constitution is not absolute. Alaska Const. art. I, § 22; *Ravin v. State*, 537 P.2d 494, 504 (Alaska 1975). As we stated in *State, Department of Revenue v. Oliver*: "The question involves a balancing of 'the nature and the extent of the privacy invasion and the strength of the state interest requiring disclosure.'" 636 P.2d at 1166 *quoting Falcon v. Alaska Public Offices Commission*, 570 P.2d 469, 476 (Alaska 1977). In *Oliver*, we ruled that the enforcement of a summons seeking state income tax information, including W–2 forms or other pay records, bank statements, credit union statements, and copies of federal tax returns, did not violate the taxpayer's constitutional right to privacy. 636 P.2d at 1167. In so holding, we reasoned:

> In light of the unchallenged validity of the state's taxing power and the agreement among the cases that self-disclosure and the accompanying power to summon records is necessary to implement the tax system, we conclude that the state has a compelling interest justifying the invasion of privacy sought here. Given the lack of connection between most information sought on a tax return and a person's more intimate concerns and the confidentiality protections afforded by AS 43.05.230, we further conclude that this interest outweighs any privacy rights violated by compulsion to fill out the form or testify before a revenue agent.

*Id; see also Pharr v. Fairbanks North Star Borough*, 638 P.2d 666 (Alaska 1981) (individual's interest in business records outweighed by borough's need to inspect them to implement tax system).

The case at bar does not involve the state's taxing power, but it does concern the equally legitimate power to regulate securities. Nearly all jurisdictions have some type of state security act in effect. The primary purpose of such statutes is to protect the unwary and unsophisticated members of the general public from deceit and fraud in securities transactions. *See generally* 69 Am.Jur.2d *Securities Regulation—State* § 1 (1973). The state has an important interest in effectively enforcing AS 45.55.

■ Even though the state's interest in securities regulation seems "sufficiently compelling to justify intrusion upon an individual's interest, the invasion must be carried out 'by the least intrusive method.'" 636 P.2d at 1166 *quoting Falcon*, 570 P.2d at 477). In *Oliver*, the records sought were all bound to be seen by others in the course of their use, and thus the taxpayer's legitimate expectation of privacy concerning them was lowered. The documents Pratt submitted for *in camera* inspection are in the same category. The two checkbooks and the complete check register, like the checking account records in *Oliver*, are "public papers" that must be produced. The other documents were all "bound to be seen by others" in their dissemination to prospective investors. While some of these documents state that they are for "confidential use only," Pratt cannot distribute them to the public, albeit a select group, and still legitimately expect them to remain his "private papers." Thus, we conclude that the state's interest in obtaining Pratt's documents as part of its securities regulatory scheme outweighs any privacy rights violated by their submission.

## IV. IMMUNITY UNDER AS 45.55.190(d)

■ Pratt claims that under AS 45.55.-190(d) [8] he is immune from prosecution con-

---

8. AS 45.55.190(d) provides:

No person is excused from attending and testifying or from producing a document or record before the administrator, or in obedience to the subpoena of the administrator or the officer designated by him, or in a proceeding instituted by the administrator, on the ground that the evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. However, no individual may be prosecuted or subjected to a penalty or forfeiture for or on account of a transaction, matter, or thing concerning which he is compelled, after claiming this privilege against self-incrimination, to testify or produce evidence, documentary or otherwise, ex-

cerning anything relating to the subject matter of the administrative subpoena. Without citation to authority, he maintains that he should be immunized irrespective of the validity of his privilege claim. *Shapiro v. United States*, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), disposes of this issue. In *Shapiro*, the United States Supreme Court interpreted the "compulsory testimony—immunity provision" of the Compulsory Testimony Act of 1893, 49 U.S.C. § 46 (1934), identical in effect to AS 45.55.190(d). 335 U.S. at 3 n. 2, 68 S.Ct. at 1377 n. 2, 92 L.Ed. at 1791 n. 2. Like Pratt, the petitioner in *Shapiro* claimed that irrespective of the validity of the privilege, the immunity provision was applicable. The Court rejected this argument, noting that "the mere fact that the person specifically claims a non-existent privilege was not intended by Congress to entitle him to the benefit of immunity." 335 U.S. at 22, 68 S.Ct. at 1386, 92 L.Ed. at 1801.

Pratt asserts no valid privilege as to the subpoenaed items. Consequently, he is not entitled to immunity under AS 45.55.190(d). *See Shapiro*, 335 U.S. at 20, 68 S.Ct. at 1385–86, 92 L.Ed. at 1800; *see also United States v. Doe*, 465 U.S. at 617 n. 17, 104 S.Ct. at 1244–45 n. 17, 79 L.Ed.2d at 563 n. 17 (a grant of immunity need be only as broad as the *privilege* against self-incrimination).

## V. ATTORNEY'S FEES

 Where a monetary judgment is not involved, Alaska Civil Rule 82 provides that the trial court has the discretion to grant the prevailing party attorney's fees in a reasonable amount. The court may also deny attorney's fees to the prevailing party. *Hansen v. Stroecker*, 699 P.2d 871, 875 (Alaska 1985); *Larry v. Dupree*, 580 P.2d 326, 327 (Alaska 1978). The "denial of a motion for such fees may not be arbitrary or capricious or for some improper motive." *Cooper v. Carlson*, 511 P.2d 1305, 1310 (Alaska 1973). Thus, an expla-

nation is required in all cases where the trial court refuses to award attorney fees to the prevailing party. *Hansen*, 699 P.2d 875; *Conway, Inc. v. Ross*, 627 P.2d 1029, 1032 (Alaska 1981); *Curran v. Hastreiter*, 579 P.2d 524, 530–31 (Alaska 1978). When no explanation is given, a remand may be necessary. *See Hansen*, 699 P.2d at 875; *Conway*, 627 P.2d at 1032; *Curran*, 579 P.2d at 531; *Cooper*, 511 P.2d at 1311.

In the case at bar, the superior court offered no explanation for the denial of the state's motion for attorney fees. Thus, the case must be remanded for an explanation of the court's refusal to award attorney's fees.

We conclude that Pratt is not privileged under either the United States Constitution or the Alaska Constitution from being forced to comply with the administrative subpoena duces tecum. Because Pratt has no valid privilege claim, he is not entitled to immunity under AS 45.55.190(d). Accordingly, we AFFIRM the superior court's order compelling production of the subpoenaed documents. The case is REMANDED to the superior court for an explanation of its refusal to award attorney's fees to the state.

COMPTON, J., not participating.

BURKE, Justice, dissenting in part.

I dissent from that part of the court's opinion holding, as a matter of law, that article I, section 9 of the Alaska Constitution provides no greater protection to Pratt than does the Fifth Amendment to the Constitution of the United States. Although the two provisions are virtually identical, I would interpret them differently in this instance.

I would adopt the interpretation advocated by the late Justice Douglas in his dissenting opinion in *Bellis v. United States*, 417 U.S. 85, 101–05, 94 S.Ct. 2179, 2189–91, 40 L.Ed.2d 678, 691–93 (1974) (Douglas, J., dissenting). Thus, I would remand to the

cept that the individual testifying is not exempt from prosecution and punishment for

perjury or contempt committed in testifying.

superior court, with instructions to determine the validity of Pratt's state constitutional claim according to that standard.