961 P.2d 414 (1998)
L.H., Appellant,
v.
Y.M., Appellee.
No. S-7604.
Supreme Court of Alaska.
May 15, 1998.
*416 Edward R. Niewohner, Shauna F. Morris, Niewohner & Wright, P.C., Fairbanks, for Appellant.
Donna M. Meyers, Delaney, Wiles, Hayes, Gerety & Ellis, Inc., Anchorage, for Appellee.
Before COMPTON, C.J., and MATTHEWS, FABE and BRYNER, JJ.

*415 OPINION

BRYNER, Justice.
In a prior custody proceeding, L.H. was barred from visiting his young daughter R.H. after his older daughter C.C. accused him of past sexual abuse. In the present case, L.H. moved to modify the prior custody order, claiming that C.C. has recanted her accusation. The superior court denied L.H.'s motion because of his continuing refusal to produce psychological records that the court ordered produced in the prior proceeding. L.H. claims that he is being impermissibly punished for asserting his constitutional right against self-incrimination. Because L.H. did not preserve his self-incrimination claim in the prior proceeding or assert it before the superior court in the current proceeding, we reject it here.
L.H. and Y.M. were divorced in 1992 after an eight-year marriage. Y.M. was awarded legal and physical custody of their daughter, R.H., who was then five years old. The custody order gave L.H. frequent visitation. In 1993 Y.M. moved to change the custody order by indefinitely suspending L.H.'s unsupervised visitation rights. Y.M.'s motion was based on an accusation by C.C., L.H.'s seventeen-year-old daughter by a prior marriage, who stated that L.H. had sexually molested her when she was growing up and that she feared that he would begin sexually molesting R.H.
After filing the modification motion, Y.M. sent L.H. a discovery request asking him to list all mental health professionals he had consulted in connection with Y.M.'s motion and to produce copies of their reports. Over the following months, L.H. ignored or resisted Y.M.'s discovery efforts and violated court orders seeking to enforce them.
Based on L.H.'s failure to comply with the court's discovery orders, Superior Court Judge Richard D. Savell eventually found that L.H. had waived any objection to production of the requested psychological records; the judge established a final deadline for their production. After L.H. ignored the deadline, Y.M. moved for sanctions. L.H. objected, asserting for the first time his privilege against self-incrimination. The court nevertheless granted Y.M.'s motion for sanctions, modifying the custody decree by terminating L.H.'s right to unsupervised visitation with R.H.
L.H. did not appeal this order. More than a year later, however, he moved to change custody, requesting sole legal and physical custody of R.H. L.H. based his motion chiefly on an affidavit from his older daughter, C.C., recanting her past allegations of sexual abuse.
In her opposition to L.H.'s motion, Y.M. disputed the truthfulness of C.C.'s recantation and urged the court to deny modification because of L.H.'s continued failure to produce his psychological records. Y.M. argued:
The defendant still has not complied with the court's order compelling discovery. The subject matter of the discovery request goes to the heart of the matter involved in both the plaintiff's earlier motion to modify visitation and the defendant's present motion to change custody  whether [L.H.] sexually abused his daughter [C.C.]. The defendant should not be permitted to use the court to achieve his own ends while in flagrant disobedience of this court's discovery orders.
The superior court agreed with this argument. After a detailed review of the case's history, the court pointed out that "the pivotal question" at issue was whether L.H. had in fact sexually abused C.C., thereby making it reasonable to fear that he would pose a risk to his younger daughter R.H. The court found that the veracity of C.C.'s conflicting stories could not be decided without delving into the issues presented in Y.M.'s earlier motion to terminate L.H.'s visitation rights and that, accordingly, L.H.'s "psychological *417 makeup is at issue." For this reason, the court rejected L.H.'s claim that production of his psychological records was irrelevant to his current claim of recantation.
Based on L.H.'s continuing failure to produce his psychological records, the court denied his motion to change custody, declining to hear his allegations of C.C.'s recantation "[u]nless and until [L.H.] either complies [with the prior production orders] or obtains relief from an appellate court." L.H. unsuccessfully moved for reconsideration and then filed this appeal.
L.H.'s primary argument on appeal may be summarized as follows: the superior court's original discovery orders required him to produce potentially incriminating documents, in violation of his right against self-incrimination; because he remains in jeopardy of criminal prosecution, the superior court still cannot lawfully compel him to produce the disputed records; accordingly, its denial of his motion to change custody based on his continued failure to produce the records amounts to a constitutional infringement.
We accept arguendo L.H.'s premise that Y.M.'s original discovery requests called upon him to produce incriminatory information as to which he had a valid claim of constitutional privilege.[1] We nevertheless reject L.H.'s claim of constitutional infringement for several case-specific reasons.
First, it is clear from the record that the superior court entered its original order denying L.H. unsupervised visitation with R.H., not as punishment for asserting his constitutional privilege, but rather as a sanction for his persistent and unexplained disregard of the court's discovery orders. That L.H. may have had a valid claim of privilege neither explains nor justifies his repeated failure to assert that claim in a timely manner in response to orders compelling him to produce the disputed records. Nor does it explain or justify his complete disregard of a court order establishing a specific procedure to determine if he had any valid privileges to assert or any other legitimate basis for resisting production.
L.H.'s belated claim of constitutional privilege  a claim first mentioned after the superior court had already found that L.H.'s disregard of its discovery orders amounted to a waiver of any objections to production, after the court had issued and L.H. had simply ignored a renewed order to produce, and after the court had reached the stage of establishing appropriate sanctions for L.H.'s discovery violations  did not convert his prior disobedience into constitutionally protected silence.
Second, as indicated above, by the time the superior court terminated L.H.'s visitation as a sanction for his failure to produce his psychological records, the court had already found that L.H.'s disregard of its prior orders  particularly its order seeking to establish L.H.'s basis for resisting discovery  amounted to a waiver of "any claim that [L.H.'s] expert's report is privileged." Because L.H. failed to appeal the superior court's order terminating his unsupervised visitation, the finding of waiver became final. L.H. is now barred from relitigating the issue.[2]
Third, it is in any event undisputed that the superior court did not deny L.H.'s change-of-custody motion as punishment for his past conduct, but rather as a sanction for his present refusal to produce his records for use in connection with the current motion. In arguing on appeal that he has a continuing right to refuse production, L.H. does not contend that the materials sought by Y.M. *418 are now protected from disclosure by any privilege other than his privilege against self-incrimination:[3] he relies exclusively on the constitutional privilege. Yet in presenting his motion to change custody to the superior court, L.H. never asserted this privilege as a basis for his continued unwillingness to produce his records.
L.H.'s change-of-custody motion made no mention of his psychological records. His ongoing failure to produce the records was first raised in the opposition to L.H.'s motion, where Y.M. urged the court to reject the motion because L.H. had not yet complied with the court's prior discovery orders. In his reply to Y.M.'s opposition, L.H. did not mention his privilege against self-incrimination. He merely claimed that his noncompliance with the production order was irrelevant to his current motion.[4]
The only references to L.H.'s constitutional privilege in the superior court record occur in his motion for reconsideration of the superior court's order denying his change-of-custody motion. After pointing out that L.H. "was under criminal investigations for alleged sexual assault of his minor daughter" at the time of the prior custody proceeding, L.H.'s motion for reconsideration asserts: "If this Court had forced [L.H.] to produce the report it would have violated his Fifth Amendment Constitutional Right given the pendency of criminal charges against him at that time." L.H.'s counsel also assures the court in a footnote that "no report exists that states with medical certainty that L.H. committed the acts he is accused of. However, even a ... nonconclusive [report] ... could have been used against him in the criminal investigation." L.H. concludes his argument for reconsideration by reiterating that his "failure to comply with this court's discovery order in 1994 was a good faith assertion of his Fifth Amendment privilege."
These references to L.H.'s constitutional privilege are in the past tense. They allude to his past assertions of the privilege and attempt to explain and justify his past failure to produce his records. They do not claim self-incrimination as a basis for L.H.'s continuing failure to produce. To the contrary, their wording unmistakably suggests that L.H. no longer stands in jeopardy of self-incrimination and no longer seeks to claim the privilege.
We find no further mention of the constitutional privilege in the record. While L.H. expressly notes in his motion for reconsideration that "in the original 1994 action, [he] argued, and still maintains, that a failure to produce a report under the provisions of Rule 35 is not a discovery violation that should end litigation," he gives no comparable indication of "still maintaining" an ongoing claim of potential self-incrimination.
In short, before he filed this appeal, L.H. did not claim the privilege against self-incrimination as a basis for his continuing failure to produce his records. Having failed to claim the constitutional privilege below, L.H. cannot raise the claim here.[5]
L.H.'s remaining points on appeal require only brief attention. L.H. argues that production of his psychological records is irrelevant to the issue of whether C.C.'s recantation is truthful; that the superior court's order denying his motion to change custody failed to take account of the best interests of R.H.; that the record does not support the imposition of litigation-ending sanctions; and that his motion to change custody set forth *419 changed circumstances requiring an evidentiary hearing.
Given the procedural history of this case, however, the superior court did not abuse its discretion in finding that the questions raised by C.C.'s recantation were inseparable from those raised in the prior custody proceeding and that L.H. could not demand to litigate the truthfulness of C.C.'s conflicting stories without calling into issue the credibility of his own denials of past sexual abuse. Thus, the court did not err in ruling that L.H.'s psychological records remain relevant and that their production is necessary to ensure a meaningful resolution of L.H.'s motion to change custody.
As the party moving for modification of custody, L.H. bears the burden of showing changed circumstances. See S.N.E. v. R.L.B., 699 P.2d 875, 878 (Alaska 1985). While a party moving to change custody is ordinarily entitled to a hearing upon alleging facts that would warrant the proposed change if proved, see Deivert v. Oseira, 628 P.2d 575, 578 (Alaska 1981), and while L.H.'s motion alleges facts that might warrant a change if true, L.H.'s refusal to produce his psychological records effectively establishes his unwillingness to litigate his allegations fully. In declining to consider L.H.'s motion to change custody, the superior court did little more than acknowledge the futility of holding an evidentiary hearing until L.H. is willing to produce the disputed records.[6] The court did not categorically deny L.H.'s motion; it indicated that the motion would not be considered "unless and until" L.H. produced his records.
Accordingly, the trial court's order does not amount to a litigation-ending sanction. Instead, it merely recognizes that, given L.H.'s current reluctance to disclose relevant evidence, he cannot succeed in carrying his burden of proving that modifying custody will best serve R.H.'s interests.[7]
The order denying L.H.'s motion to change custody is AFFIRMED.
EASTAUGH, J., not participating.
NOTES
[1] We express no view on the issue except to note that, given the facts of this case, determining the precise scope of L.H.'s privilege against self-incrimination under the federal and Alaska constitutions would present difficult questions. Compare, e.g., Baltimore City Dep't of Soc. Servs. v. Bouknight, 493 U.S. 549, 110 S.Ct. 900, 107 L.Ed.2d 992 (1990), United States v. Doe, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), and Pratt v. Kirkpatrick, 718 P.2d 962, 965-66 (Alaska 1986), with State v. Summerville, 948 P.2d 469 (Alaska 1997), and Scott v. State, 519 P.2d 774 (Alaska 1974).
[2] See Matter of Pacific Marine Ins. Co., 877 P.2d 264, 267 (Alaska 1994) (explaining requirements for collateral estoppel); cf. Calhoun v. Greening, 636 P.2d 69, 72-73 & n. 4 (Alaska 1981) (indicating that collateral estoppel may be based on any appealable order).
[3] Specifically, on appeal L.H. does not dispute Y.M.'s argument that he waived the attorney-client and attorney work product privileges during the prior custody proceeding.
[4] On the issue of his continuing failure to produce, L.H.'s reply to Y.M.'s opposition says only: "For whatever reason he chose not to comply with this court's prior order, it has no bearing on the outcome of this motion. This motion is based upon the sole grounds that the act for which he was limited custody and visitation ... has now been acknowledged as untrue."
[5] See, e.g., Arnett v. Baskous, 856 P.2d 790, 791 n. 1 (Alaska 1993); Zeman v. Lufthansa German Airlines, 699 P.2d 1274, 1280 (Alaska 1985). Since it is well settled that the constitutional privilege may be lost through lack of assertion, see Minnesota v. Murphy, 465 U.S. 420, 427, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), and that the claimant of the privilege has the burden of establishing some "real or substantial hazard of incrimination," E.L.L. v. State, 572 P.2d 786, 788 (Alaska 1977), there is no plain error here.
[6] The futility of a hearing is apparent not only as to L.H.'s primary ground for changing custody  C.C.'s recantation  but also as to the alternative grounds asserted by L.H. in his motion to change custody  principally Y.M.'s recent change of residence. L.H.'s secondary grounds obviously would not support an award of custody to L.H. unless the court first determined that he had not sexually abused C.C. and therefore posed no ongoing risk to R.H.
[7] Our ruling makes it unnecessary to decide L.H.'s claim that the superior court erred in considering the affidavit of Janna Eyer-Stough.